**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JENNIFER LYNN DEES and
ETHAN DAVIS SMITH,

                                Plaintiffs,

                                                        1:24-CV-0001
                v.                                      (MAD/DJS)

MICHAEL ZURLO, *et al.*,

                                Defendants.

**APPEARANCES:**                            **OF COUNSEL:**

JENNIFER LYNN DEES
*Pro se Plaintiff*
Clifton Park, New York 12065

ETHAN DAVIS SMITH
*Pro se Plaintiff*
Clifton Park, New York 12065

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT RECOMMENDATION and ORDER

### I.    INTRODUCTION

The Clerk has sent to the Court a Complaint filed by pro se Plaintiffs Jennifer

Lynn Dees and Ethan Davis Smith. Dkt. No. 1, Compl.  Plaintiffs have not paid the

filing fee, but have submitted Motions to Proceed *In Forma Pauperis*.  Dkt. Nos. 2 & 3.

Also pending are requests for leave to file electronically.  Dkt. Nos. 4 & 5.  For the

reasons outlined below, the Court recommends that the Complaint be dismissed in its

entirety.   Given that recommended disposition, the Motions for leave to file electronically are denied.

In their 170-page pro se Complaint, Plaintiffs Jennifer Lynn Dees and Ethan Davis Smith collectively assert 30 federal and state claims against 53 individual and municipal Defendants.   Compl.   In sum, Plaintiffs make conclusory claims against virtually every judge, prosecutor, social service worker, private attorney, private party, witness, or medical professional that was involved in a long-running custody and/or support dispute between Plaintiff Ethan Smith[1] and Defendant Veronica Smith. The matter is presently being litigated in Saratoga County Supreme and/or Family Court. The Complaint alleges federal RICO claims (claims 1-2); claims under 42 U.S.C. §§ 1983 & 1985, alleging violations of procedural due process, substantive due process, First Amendment retaliation, equal protection, abuse of process, *Brady* violation, failure to intervene, and a claim under *Monell*, (claims 3-14); a claim under the American with Disabilities Act (claim 15); and numerous state law claims (claims 16-30).   Plaintiff's summary of the allegations contained in the Complaint is as follows:

> The plaintiffs allege a conspiracy to violate both state and federal constitutional rights, encompassing acts of deprivation of rights, misconduct, negligence, collusion, malpractice, and discrimination, extending to claims of wrongful death. Furthermore, the plaintiffs assert instances of malicious prosecution, selective prosecution, due process violations, failure to intercede, and point to issues of supervisory and municipal liability, alongside infringements under (RICO). The defendants engaged in fraudulent practices, illicit negotiations, and extortion tactics to enforce compliance with illegal orders. The Plaintiffs have been targeted with false accusations, such as felony theft involving

---

[1]  While Jennifer Lynn Dees was not a party to this legal proceeding, it is alleged that she was involved in certain aspects of the litigation and was impacted by the issuance of various protective orders. *See*, *e.g.*, Compl. at p. 10.

significant assets and unfounded suspension of driving privileges, systematically orchestrated to undermine their personal integrity, professional standing, and social relationships. The severity and complexity of these allegations have led the plaintiffs to call for federal intervention, arguing that the magnitude of the corruption and misconduct is beyond the purview of state-level resolution.

Moreover, the plaintiffs allege that the defendants have actively interfered with court proceedings, engaged in witness tampering, and committed acts of obstruction of justice, perjury, and witness intimidation. They argue that these actions are part of a concerted effort by the defendants to destroy their reputations, careers, familial bonds, religious affiliations, and friendships, pointing to a deliberate strategy aimed at collapsing their lives in a comprehensive and destructive manner.

Compl. at ¶¶ 5-6.

The present action, therefore, appears primarily an attempt to have the federal courts intervene in a pending state court matter. The sheer volume of the Complaint, coupled with its wholly conclusory allegations of a far-reaching conspiracy seeking to make every Defendant responsible for all acts of perceived misconduct by everyone else, violates the basic notice and "short and plain" requirements of FED R. CIV. PROC. 8(a). Moreover, such a pleading goes against a core §1983 principle that defendants are generally only responsible for their own acts. Further, the Complaint ignores the fact that a large portion of the named Defendants are either absolutely immune from suit or are not state actors subject to suit under § 1983. Finally, insofar as the Plaintiffs are looking to overturn decisions in an ongoing divorce, support, and custody proceeding, the Court does not have jurisdiction to hear the matter, or, if it does, it should abstain from hearing it. For the reasons that follow, therefore, the Court recommends that Plaintiffs' Complaint be dismissed.

## II.    Factual Statement and Procedural History

Plaintiff Ethan Smith and Defendant Veronica Smith were married and have three children together. The Smiths separated and, on or about June of 2020, a divorce proceeding was commenced. Compl. at ¶ 113.  The matter was assigned to Judge Paul Pelagalli, who was a Family Court Judge in Saratoga County but was, at the time, an acting Supreme Court Judge.  As part of that proceeding issues involving custody and support were litigated. The parties were represented by counsel, and the three children also had assigned counsel.  The Court issued various orders and decrees in connection with the proceeding, including orders of maintenance and support. Plaintiffs disagree with the orders and rulings that were issued by the Court.  Plaintiffs maintain that Defendant Veronica Smith submitted false financial information regarding both her assets, as well as Plaintiff Smith's finances, resulting in a fraudulent support order.  This caused significant financial difficulty, resulting in negative actions being taken against Plaintiff Smith for being in arrears of his support obligations, including having his license suspended.  Plaintiff Smith alleges that the support order was issued without due process or a sufficient hearing.

Plaintiffs also alleged that numerous orders of protection, or temporary orders of protection, were erroneously issued against them by either Family Court or Supreme Court.  Compl. at ¶ 138.  Conversely, their request for orders of protection were not granted, or were delayed, and this represented an unequal application of the law as to them.  Compl. at ¶¶ 73, 180.  Further, Court hearings were held, during which time it is alleged that the involved attorneys improperly advocated for their clients, or in the case

of Plaintiff Smith, did not represent him with the required level of skill.  Compl. at ¶¶ 49, 61, 65, & 85.  Witnesses allegedly lied, or obfuscated, or covered up for other witnesses. Compl. at ¶¶ 136, 164, 348.  The Court itself was biased against the Plaintiff Ethan Smith and did not treat him properly. Compl. at ¶¶ 39, 308. Ultimately a divorce decree was granted on or about August 31, 2023, but Plaintiff Smith appears to allege that the decree was improper because there was no jury trial. Comp. at ¶¶ 155 & 170

During the same time period, it is alleged that the Defendant social service workers and school officials did not properly investigate claims of abuse and neglect by Defendant Veronica Smith, or her significant other, against the Smith children.   Compl. at ¶¶ 56, 76.  It is alleged that police officers did not provide the level of protection that the Plaintiffs were entitled to, and failed to intervene in the conduct of private parties and/or Defendant Smith.  Compl. at ¶¶ 264-266.  The alleged failure of public officials to protect the Plaintiffs resulted in severe emotional stress, which in turn is said to be the cause of Plaintiff Dees having a miscarriage.  Compl. at ¶ 53.

## III.   DISCUSSION

### A. Standard of Review

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that  . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

In reviewing a pro se complaint, this Court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiffs have stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).  Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P.  8(a)(2)).  Furthermore, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555).   Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.   *Id.* (internal quotation marks and alterations omitted).   Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

"Ordinarily, a court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'"   *Bruce v. Tompkins Cnty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991)).   However, where the grounds for dismissal offer no basis for curing the defects in the pleading, dismissal with prejudice is appropriate.   *Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015).

### B.  Jurisdiction

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (challenge to subject matter jurisdiction cannot be waived); Fed. R. Civ. P. 12(h)(3) (court may raise basis of its jurisdiction sua sponte).   When subject matter jurisdiction is lacking, dismissal is mandatory.   *United States v. Griffin*, 303 U.S. 226, 229 (1938); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it

lacks subject-matter jurisdiction, the court must dismiss the action.").  In light of the Plaintiffs pro se status, the Court will sua sponte assess whether subject matter jurisdiction is present in this case.  *LeClair v. Vinson,* 2019 WL 1300547, at *4 (N.D.N.Y. Mar. 21, 2019), *report and recommendation adopted,* 2019 WL 2723478 (N.D.N.Y. July 1, 2019).

In the present case, Plaintiffs cite to violations of federal constitutional law, and seeks redress under the civil rights statute, 42 U.S.C. §§ 1983 & 1985**,** the American with Disabilities Act, and 18 U.S.C. §1964(a).  The federal courts would normally have original jurisdiction under 28 U.S.C. § 1331 to hear such a case; however, because of the precise allegations of the claims, the Court must also consider two additional well established jurisdictional rules.

### 1. The Rooker-Feldman Doctrine

A dismissal pursuant to the *Rooker-Feldman* doctrine is for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *Remy v. New York State Dep't of Tax'n and Fin.*, 507 F. App'x 16, 18 (2d Cir. 2013).  This doctrine divests the federal court of jurisdiction to consider actions that "seek to overturn state court judgments." *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination.  *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

There are four requirements to the application of *Rooker-Feldman*: (1) "the federal-court plaintiff must have lost in state court"; (2) the plaintiff's injuries must have been caused by a state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the state-court judgment must have been rendered prior to filing the federal court action. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). A challenge to "the validity or enforcement of [a] child support order itself" constitutes an injury "caused by a state court judgment." *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013); *Davis v. Westchester Cnty. Fam. Ct.*, 2017 WL 4311039, at *8 (S.D.N.Y. Sept. 26, 2017) ("Courts have repeatedly invoked *Rooker-Feldman* in cases in which plaintiffs challenge family court decrees setting child support arrears."). In the present case, Plaintiff Smith seeks to overturn various orders issued by the state courts, having been unsuccessful in doing so by way of their Article 78 action, and accordingly such claims are effectively barred by *Rooker-Feldman*. *Errato v. Seder*, et al, 2024 WL 726880, at *2 (2d Cir. Feb. 22, 2024); *Sims V. Kaufman,* 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024) ("Inasmuch as Plaintiff criticizes any final child support decision of the New York Family Court, Bronx County, in an effort to request that this Court overturn that final decision, the *Rooker-Feldman* doctrine bars this Court from granting Plaintiff such relief.").[2]

---

[2] Dees, who was not a party to those proceedings, would clearly lack standing to assert claims challenging the outcome of them.

### 2.  *Younger Abstention*

In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. 37, 43-44 (1971).  The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution.  *Id.  Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) "civil proceedings that are akin to criminal proceedings"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts."  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013).  In *Sprint*, the Court used state-initiated custody proceedings as an example of civil proceedings which are akin to criminal proceedings.  *Id*. at 79 (citing *Moore v. Sims*, 442 U.S. 415, 419-420 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents)); *see also Davis v. Baldwin*, 594 F. App'x 49, 51 (2d Cir. 2015) (same).

While it is true that *Younger* abstention does not apply to claims for monetary damages, such as the present one, the doctrine does dictate that "a stay of the action pending resolution of the state proceeding may be appropriate."  *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000). This is particularly the case in matters involving divorce, alimony, and child custody.  This "domestic relations" abstention is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which the federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993); *see*

*also Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (When a case calls for a federal court to interpret state domestic relations law or "immerse itself in domestic relations matters," the court must abstain from proceeding with the case due to the state courts' "greater interest and expertise" in that field.).  Therefore, "to the extent that Plaintiff is asking the Court to grant injunctive and declaratory relief with respect to ongoing Family Court and Supreme Court proceedings, including any post-judgment proceedings, the Court must abstain from hearing those claims under the *Younger* abstention doctrine." *Stampfl v. Eisenpress*, 2024 WL 37075, at *4 (S.D.N.Y. Jan. 3, 2024).

### C. RICO Claims

Plaintiffs' first two federal claims are that Defendants allegedly violated, and conspired to violate, provisions of the Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962 *et seq*.  As noted by the Second Circuit, "[t]o establish a RICO claim, a plaintiff must show: (1) a violation of ...18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *DeFalco v. Bernas,* 244 F.3d 286, 305 (2d Cir. 2001)).  To establish a violation of section 1962, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 496 (1985).  "Racketeering activity," in turn, is defined to include any "act" indictable under various specified federal statutes, including the mail and wire fraud statutes and the obstruction of justice statute. *See* 18 U.S.C. § 1961(1) (defining

"racketeering activity" to include offenses indictable under 18 U.S.C. §§ 1341 (relating to mail fraud), 1343 (relating to wire fraud), and 1503 (relating to obstruction of justice)). A "pattern of racketeering activity" is defined by the statute as "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5).

Courts generally approach RICO claims with a cautious eye, and with the understanding that Congress' goal in enacting RICO was to prevent legitimate businesses from becoming infiltrated by organized crime. *See United States v. Porcelli*, 865 F.2d 1352, 1362 (2d Cir. 1989). "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 346 (S.D.N.Y. 1998) (internal quotation marks omitted).

As noted above, the present case outlines a contentious and lengthy custody and support dispute, and the Court is not unmindful of the stress that results from such proceedings.  However, to allow the racketeering law to be utilized to create parallel federal litigation because a party is dissatisfied with the outcome of a pending family/supreme court matter, is both unjustified and unwise.

This principle was articulated by the Second Circuit in the case of *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018). The *Kim* plaintiff was a restaurant owner and a defendant in a trademark infringement suit. After the trademark case was dismissed at the summary judgment stage, the plaintiff sued his opponent under RICO, alleging that the initial lawsuit was simply an extortion attempt.  *Id.* at 101.  The plaintiff further claimed that

false legal documents were used to mislead the court, all of which constituted both mail fraud and a pattern of racketeering activity. *Id.* The District Court dismissed the lawsuit for failure to state a claim, noting that conduct during the course of litigation cannot constitute predicate acts for purposes of RICO. *Id.* at 99. The Second Circuit affirmed, concluding that "the allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act." *Id.* at 104. The Second Circuit further set forth the following basis for this ruling:

> [T]here are compelling policy arguments supporting this rule. First, "[i]f litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action," which "would inundate the federal courts with procedurally complex RICO pleadings." Dist. Ct. Op. at 10–11, Appellant App'x at 266–67; *see also Nora F. Engstrom, Retaliatory RICO and the Puzzle of Fraudulent Claiming*, 115 MICH. L. REV. 639, 696 (2017) (permitting RICO suits based on prior litigation activities would "engender wasteful satellite litigation"). Furthermore, "permitting such claims would erode the principles undergirding the doctrines of res judicata and collateral estoppel, as such claims frequently call into question the validity of documents presented in the underlying litigation as well as the judicial decisions that relied upon them." Dist. Ct. Op. at 11, Appellant App'x at 267; see also *Gabovitch [ v. Shear],* 1995 WL 697319, at *3, 1995 U.S. App. LEXIS 32856 [ (1st Cir. 1995) ] ("In essence, simply by alleging that defendants' litigation stance in the state court case was 'fraudulent,' plaintiff is insisting upon a right to relitigate that entire case in federal court.... The RICO statute obviously was not meant to endorse any such occurrence."). Moreover, endorsing this interpretation of RICO "would chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts" because "any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability." Dist. Ct. Op. at 11, Appellant App'x at 267 (quoting *Curtis & Assocs.*, 758 F.Supp.2d at 173); *see also Engel v. CBS, Inc.,* 182 F.3d 124, 129 (2d Cir. 1999) (noting the "strong public policy of open access to the courts for all parties and [the need] to avoid ad infinitum [litigation] with each party claiming that the opponent's previous action was malicious and meritless" (internal quotation marks and citations omitted) (second brackets in original) ).

*Id.*

For the reasons cogently summarized in *Kim*, the present RICO allegation, arising out of the state court litigation, fails to set forth a cognizable RICO claim.

### D. Claims Under 42 U.S.C. §§ 1983 & 1985

As to Plaintiffs claims under the Civil Rights Act, *see* Compl. at ¶¶ 207-298 (claims 3-14), an initial review discloses that these claims are also barred by principles of immunity, as well as the failure of the Plaintiffs to allege the essential elements of such claims.

#### 1. Absolute Judicial Immunity

The claims under 42 U.S.C. §§1983 and 1985 against the judges who are, or had been, involved in the state court case, are barred by the doctrine of absolute judicial immunity. Judicial Immunity is applicable to conduct taken by the court as part of its judicial power and authority, and its absolute protection extends to all judicial acts except those performed in the clear absence of all jurisdiction. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967). The Supreme Court has emphasized that the scope of a judge's jurisdiction must be construed broadly. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (citing *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation...." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

- 14 -

Allegations of unconstitutional conduct are made in the Complaint against the following judicial officers, members of their staff, and court-appointed experts: acting Saratoga Supreme Court Judge Paul Pelagalli; Saratoga Supreme Court Judges John Ellis and Diane Freestone; City Court Judge Jeffrey Waite; Saratoga County Court Judge James Murphy; Administrative Judge for the Fourth Judicial District Judge Felix Catena; Appellate Division Justices Elizabeth Garry and Christine Clark; Court Attorney Karla Conway; and Court-appointed experts Jaqueline Bashkoff and Dr. Mary O'Conner. A summary of their conduct is important in deciding the validity of those allegations.

Acting Saratoga County Supreme Court Judge Pelagalli was initially assigned to the *Smith v. Smith* case. The claims against Judge Pelagalli arise out of acts taken in his judicial capacity. These acts include the October 20, 2020, issuance of an Order of maintenance and child support, and then reiterating that Order on April 27, 2022, all allegedly done without a proper hearing or due process. Compl. at ¶ 119. Further, Plaintiffs allege Defendant Pelagalli misused his judicial power by negligently or inappropriately issuing, or failing to issue, orders of protection and/or temporary orders of protection; improperly handling proceedings before him, including but not limited to, not providing Plaintiff Smith with a copy of an evaluation by Dr. Bashkoff of the children, excluding Plaintiff Dees from the courtroom, not allowing Dees to testify at a proceeding, threatening to hold Dees in contempt, not signing certain trial subpoenas, and having ex parte communications with witnesses; labeling Plaintiff Smith in a decision as a "narcissist" without having a medical degree; imposing an order of

protection that would not allow Plaintiff Dees to be present during overnight visitation by Plaintiff Smith's children, which according to Plaintiffs, led to a miscarriage; and granting a divorce decree on August 31, 2023 without a jury trial. Compl at ¶¶ 31-33, 138-171.

John Ellis is a Saratoga County Supreme Court Justice and replaced Judge Pelagalli on the *Smith v. Smith* matter in October 2023. Compl. at ¶ 38. According to the Plaintiffs, Judge Ellis has mirrored the approach of the previous judge, neglected evidence of fraud, child abuse, and assault, and has not taken the time to rectify the situation to the Plaintiffs' satisfaction. Compl. at ¶¶ 38-39.

Judge Jeffrey Wait is a Saratoga Springs City Court Judge and Acting County Court Judge. Plaintiffs' Complaint against Judge Wait relates to his alleged bias against the Plaintiffs; the failure to provide adequate safeguards following a November 8, 2023, assault by Defendant Smith; issuing an illegal stay-away order; declining to recuse himself; failing to issue an order of protection in the Plaintiffs' favor, which is said to have contributed to the November 8, 2023 assault; improperly dismissing Plaintiff Smith's custody petition; presiding over a December 19, 2023, court proceeding where there was misconduct, including having Plaintiff Dee (Plaintiff Smith's alleged in-court ADA notetaker) leave the courtroom due to a court-mandated parenting schedule; and, overall, abusing his judicial authority. Compl. at ¶¶ 34, 36, 37, 176, 179, 185.

The Hon. Felix Catena is the Administrative Judge for the Fourth Judicial Department and is sued in that position. According to Plaintiffs, Judge Catena is in charge of assigning judges in the Saratoga Courts and, despite being notified on 30

occasions regarding the conduct of judges under his supervision, he failed to take appropriate action, or to conduct independent investigations to ascertain the presence of fraud.  Compl. at ¶¶ 24, 43, 45, 145, 306.

Supreme Court Judge Dianne Freestone was assigned to handle the Plaintiffs' Article 78 Petition challenging the conduct that occurred during the ongoing divorce and custody proceedings, and she is sued because she "prematurely" dismissed the Plaintiffs' Article 78 proceeding.  Compl. at ¶ 44.  Similarly, Elizabeth Garry, Chief Justice of the Appellate Division, and Christine Clark, Associate Justice of the Appellate Division, are also sued for upholding the dismissal of the Article 78 proceeding.  *Id.  See Smith v. Pelagalli*, 2023 WL 6801376 (3d Dep't 2023).  An appeal of that decision was dismissed by the New York State Court of Appeals. *Smith v. Pelagalli*, 40 N.Y.3d 1060 (2023).

James Murphy holds the position of County Court Judge for Saratoga County. The Complaint alleges that Judge Murphy, "in his capacity as an appellate judge for Saratoga, failed to fulfill his judicial responsibilities by ignoring crucial evidence. . ." Compl. at ¶ 46.  As a result, Plaintiff Smith is said to now face trial on fraudulent charges. *Id.*

As summarized above, the present Complaint against the judges relates to alleged misconduct or improper decisions by Family Court, Supreme Court, and County Court Judges in Saratoga County, as well as members of the Appellate Division, Third Judicial Department.  *See* Compl.  This misconduct includes how those judges conducted their proceedings and hearings; issued or failed to issue orders of protection;

analyzed legal matters and drafted their decisions and orders; controlled discovery; assigned counsel and experts; and generally handled cases.  That conduct is, without doubt, judicial in nature.  The Plaintiffs' arguments that the Justices were wrong in their conclusions because they were biased, misinformed, malicious, or incompetent, simply miss the mark.  In construing such immunity, the reviewing courts look to the nature of the act, not the act itself.  "If judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error ... or was in excess of his authority. *Mireles v. Waco*, 502 U.S. 9, 12-13 (1991) (internal quotations and citations omitted).  Accordingly, courts must evaluate the nature and function of the act, rather than the act itself.  *Id.*

Finally, as amended in 1996, 42 U.S.C. § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated, or declaratory relief was unavailable." 42 U.S.C.S. § 1983.  There is no allegation in the Complaint regarding the violation or unavailability of such a declaratory decree.

For these reasons, Plaintiffs claims against the above-named Judicial Defendants are dismissed.[3]  *See Caroselli v. Curci*, 371 F. App'x 199, 202 (2d Cir. 2010) (summary order) ("With respect to the state court judges, insofar as [the plaintiff] seeks money damages, such claims are barred by absolute judicial immunity. Insofar as [the plaintiff]

---

[3]  The Judicial officers named in this suit are also protected under the doctrine of sovereign immunity. *In Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a § 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365–68 (2d Cir. 2009).  That holding was just recently reaffirmed by the Second Circuit.  *Bythewood v. New York*, 2023 WL 6152796, at *1 (2d Cir. Sept. 21, 2023) ("The New York State Unified Court System is "unquestionably an arm of the state" that shares in New York's immunity to suit.").

seeks injunctive relief against the state court judges, such relief is statutorily barred." (citations omitted)).

Next, Plaintiffs sue Karla Conway, Judge Pelagalli's court attorney, who is said to have participated with the Judge in the issuance of fraudulent orders, defamed Plaintiffs in and out of court, falsified statements in Court, and generally was biased. Compl. at ¶¶ 24, 40, 41, 42, 119, 122.  These litigation related claims fail because absolute judicial immunity, as discussed above, also applies to a judicial law clerk, who is considered at law to be an extension of the judge at whose pleasure she serves. *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988).

### 2. *Quasi-Judicial Immunity*

Dr. Mary O'Connor and Dr. Jacquelyn Bashkoff were appointed by Judge Pelagalli to perform psychological assessments regarding the Smith Family.  Compl. at ¶ 91.  Plaintiffs take issue with the O'Connor and Bashkoff Reports and maintain that they are not impartial evaluations and contributed to the "wrongful separation of the children from Plaintiff [Smith]".  Compl. at ¶¶ 91, 95, 96.   Plaintiff also maintains that the fact that Bashkoff did not finish her report and did not testify, "hints at collusion." Compl. at ¶ 98.

The claims against Drs. O'Conner and Bashkoff are likewise barred by quasi-judicial immunity.  "[A]bsolute immunity may attach to non-judicial officers and employees where the individual serves as an arm of the court or where the individual conducts activities that are inexorably connected with the execution of court procedures and are analogous to judicial action." *McKnight v. Middleton*, 699 F. Supp. 2d 507, 527

(E.D.N.Y. 2010); *see Cherner v. Westchester Jewish Cmty. Servs., Inc.*, 2022 WL 17817882, at *1 (2d Cir. Dec. 20, 2022) (family court ordered Defendants to conduct a forensic evaluation and to prepare a report to aid that court's decision in a child custody suit. These acts are "integrally related to an ongoing judicial proceeding" and therefore entitled to quasi-judicial immunity).  The fact that Dr. Bashkoff did not ultimately testify does not affect her entitlement to immunity. *Di Costanzo v. Henriksen*, 1995 WL 447766, at *2 (S.D.N.Y. July 28, 1995) ("The doctrine of witness immunity bars an action against [clinical psychologist and medical doctor who provided medical and psychological evaluations to the court] even if they did not formally testify as witnesses in the proceedings, since their role in the proceedings would have been essentially that of witnesses.").

A large majority of the Plaintiff's allegations are leveled against various private attorneys who represented parties in the divorce, custody, and support matters.  This group includes the attorneys who were appointed to represent the interest of the children; Jessica Vinson of Vella Carbone, LLP; Denise Rest-Tobin; Elena Tastensen; and Heather Corey-Mongue.  Compl. at ¶ 48.  Courts in this circuit have concluded that such court appointed counsel are entitled to quasi-judicial immunity from suit. *McKnight v. Middleton*, 699 F. Supp. 2d 507, 528 (E.D.N.Y. 2010), *aff'd,* 434 F. App'x 32 (2d Cir. 2011); *Yapi v. Kondratyeva*, 340 F. App'x 683, 684-85 (2d Cir. 2009) (law guardian entitled to quasi-judicial immunity when acting as an arm of the court); *see also Zavalidroga v. Hester*, 2020 WL 210812, at *8 (N.D.N.Y. Jan. 14, 2020), *report and recommendation adopted*, 2020 WL 633291 (N.D.N.Y. Feb. 11, 2020).

### 3. Government Attorney Immunity

The Court must also dismiss Plaintiffs' section 1983 & 1985 claims for damages against the government attorneys who were representing governmental agencies at the proceedings.  Samuel Maxwell and Emily Williams were Deputy District Attorney's involved in the custody and support case.  Compl. at ¶ 14.  It is generally alleged that they acted in unison with all other Defendants to submit deceptive and counterfeit affidavits with various courts and clerks.  Compl. at ¶ 361.   As to Defendant Williams, it is specifically alleged that there may be questions regarding her adherence to discovery obligations, including *Brady* obligations.  Compl. at ¶¶ 186, 291.

Michelle Granger and Michael Hartnett were Saratoga County attorneys, and provided guidance to the Saratoga child support enforcement agency, and in that role they are alleged to have neglected numerous fraud complaints regarding Defendant Veronica Smith and failed to investigate and correct wrongdoing.  Compl. at ¶ 71, 215, 268.

Government attorneys are immune from suit under section 1983 for damages "when functioning as an advocate of the state in a way that is intimately associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006). This immunity applies to government attorneys who perform functions "'that can fairly be characterized as closely associated with the conduct of litigation or potential litigation' in civil suits." *Id.* (quoting *Barrett v. United States*, 798 F.2d 565, 572 (2d Cir. 1986)); *see also Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) ("[A]n attorney for a county Department of Social Services who 'initiates and prosecutes child protective orders and

represents the interests of the Department and the County in Family Court' is entitled to absolute immunity.").

Moreover, "the common law precedents also extend absolute immunity to [government attorneys] participating in the administrative process." *Bloom v. New York State Comm'r of Health*, 573 F. Supp. 2d 732, 740 (E.D.N.Y. 2004) (citing *Butz v. Economou*, 438 U.S. 478, 509-10 (1978).

### 4. Witness Immunity

Several Defendants are being sued based upon their testimony at various court hearings, or in connection with testimony provided to the Court via some other method. With regard to Deputy Jillian Knox, for example, Plaintiffs allege that she testified at a court hearing on November 16, 2023, but her testimony was inconsistent, and she may have potentially coordinated her story with others.  Compl. at ¶¶ 186, 190.  Defendant Veronica Smith is said to have testified and have provided false testimony in legal proceedings and introduced "misleading" evidence.  Compl. at ¶¶ 100, 127.  Defendant Tedesco testified and was cross examined by Plaintiff, Compl. at ¶¶ 187-188, and while Defendant Bashkoff did not testify, she did submit reports to the state court for its review and consideration, Compl. at ¶ 98.   Further, a report and/or psychological evaluation prepared by Dr. O'Connor was utilized as the basis of the proceedings against Plaintiff, and she was cross examined in Court.  Compl. at ¶¶ 93, 98, 150. Finally, the Complaint indicates that Attorney Tobin testified.  Compl. at ¶ 162.

The Court must also dismiss all of Plaintiffs' §§ 1983 & 1985 claims for damages that arise from any of the Defendants' testimony, either in person or by

affidavit or other means, in the County Court or the Family Court proceedings. Grand jury and trial court witnesses are absolutely immune from liability under section 1983 for damages arising from their testimony, even if that testimony was false. *See Rehberg v. Paulk*, 566 U.S. 356, 366-69 (2012); *Briscoe v. LaHue,* 460 U.S. 325 (1983). The Supreme Court reasoned that without such immunity, "[a] witness's apprehension of subsequent damages liability might induce ... self-censorship," either by making witnesses reluctant to come forward in the first place or by distorting their testimony, which would then deprive the finder of fact of candid and objective evidence. *Briscoe v. LaHue*, 460 U.S. at 333. This immunity has been extended to witnesses in Family Court proceedings. *See Buchanan v. Ford*, 638 F. Supp. 168, 171 (N.D.N.Y. 1986). This witness immunity extends to providing information by way of affidavit on issues such as support obligations. *Hart v. Shmayenik*, 2023 WL 7164975, at *5 (S.D.N.Y. Oct. 30, 2023). Nor can Plaintiffs attempt an end run around this immunity by alleging a conspiracy with other individuals to present false testimony. *Rehberg v. Paulk*, 566 U.S. at 369. Accordingly, all claims arising out of a witness's testimony are subject to dismissal.

### 5. State Action and Conspiracy

To state a claim under section 1983, a plaintiff must allege both that (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins,* 487 U.S. 42, 48-49 (1988). Private parties generally are not state actors and therefore are not usually liable under section 1983. *Sykes v. Bank of Am.*, 723 F.3d 399,

406 (2d Cir. 2013); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Plaintiffs have named the following private individuals and entities as Defendants:  Sarah Wood, Donnellan Law, Saratoga Center for the Family, Jessica Vinson, Vella Carbone LLP, Denise Resta-Tobin; Elena Tastensen, Heather Corey-Mongue, Marc Greenwald, Lisa Proskin, Proskin Law, JoAnne Coughtry, Wende Tedesco, Rebecca Baldwin, Marriet M. West Child Advocacy, Saratoga Center for the Family, Dr. O'Connor, Dr. Bashkoff, NP Julia Gross, Veronica Smith, James Bennett and Sharon Bennett.  Plaintiffs have alleged no facts showing that any of these Defendants has acted as a state actor in any relevant respect, or that their conduct is fairly attributable to the state.  *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (dismissing § 1983 claims where defendants, including plaintiff's ex-wife, "acted purely as private individuals in connection with the state court [divorce and child custody] proceedings").

Further, the allegations of fact that Victoria Smith went to family court, filed claims for support and custody, and requested protective orders does not establish that Ms. Smith, a private citizen, was acting "under color of state law" for the purposes of § 1983 liability for the alleged constitutional violations.  *Jacobs v. Jacobs*, 2023 WL 4503766, at *3 (2d Cir. July 13, 2023).  "Under our precedents, the fact that [defendant] sought the protection of family court does not mean [s]he was acting under color of state law."  *Id.*;  *see also Serbalik v. Gray*, 27 F. Supp. 2d 127, 131 (N.D.N.Y. 1998) (A

private party does not act under color of state law when she merely elicits state aid or invokes the exercise of the state official's authority); *Taylor v. Nichols*, 558 F.2d 561, 564 (10th Cir. 1977) ("The acts of filing a claim and testifying at trial do not constitute state action. These are private acts.").

Plaintiffs do allege that all of the Defendants conspired with each other to violate their federal constitutional rights. The Court understands these allegations as attempting to state a claim under section 1983, as well as 42 U.S.C. section 1985(3) ("section 1985"), which applies specifically to conspiracies.  But because Plaintiffs' allegations are vague and lack supporting facts, they fail to state a claim of conspiracy under either section 1983 or section 1985(3). *See Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (noting that section 1985 claims must be dismissed where they contain "only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights"). The Supreme Court has noted that "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980);  *see also Deem v. DiMella-Deem*, 2019 WL 1958107, at *8 (S.D.N.Y. May 2, 2019) (allegations of a conspiracy to violate civil rights must be pleaded with specificity, and "[a]n otherwise invalid [§] 1983 claim cannot survive a motion to dismiss merely by mentioning the word 'conspiracy'"); *Parent v. New York*, 786 F. Supp. 2d 516, 540 (N.D.N.Y. 2011) (Private attorney for wife during divorce proceedings was not liable under § 1983 for allegedly conspiring to violate husband's constitutional rights, despite husband's allegations that attorney engaged in ex parte

conversation with judges, where there was no evidence suggesting concerted action between attorney and any state actor to deprive husband of his civil rights)

### 6. No Affirmative Duty

The claims against the Saratoga County police officials center on their alleged failure to provide protective services to the Plaintiffs, or the more generalized failure to provide supervision.   In particular, on November 8, 2023, it is alleged that Saratoga County Deputies Connor Houle and Tyler Stank were dispatched to the Plaintiffs' home on a report of an incident involving Defendant Veronica Smith. After they arrived at the scene, it is alleged that their Supervisor, Capt. David Huestis, instructed the two Deputies to leave the scene without ensuring the safety and security of the Plaintiffs, and further, that after the Deputies left the scene, Plaintiffs were assaulted by Defendant Smith.   Compl. at ¶ 18.   Later in the day when Defendant Smith reported that the Plaintiffs had in fact attacked her, her claim was accepted without consideration of the Plaintiffs' version of events. *Id.*

Similarly, the day before Father's Day in 2022, police were called to the Plaintiffs' residence, in which point Defendant Smith's mother, Sharon Bennett, and stepfather James Bennett had been in the driveway. Compl. at ¶ 20.   The New York State Police were present, and Christopher Hollenbeck and Scott Carpenter, Supervisors from the Saratoga County Sheriff's Office, arrived and consulted with the State Police. As result of that conversation, it is alleged that the police officers who were present did not offer protection to the Plaintiffs, nor compel the Bennetts to vacate the driveway. Compl. at ¶ 15.

On October 12, 2023, Plaintiff Smith alleges that he approached Defendant William Heid, with the Saratoga County Sheriff's Office, to make a complaint of parental interference by Defendant Veronica Smith.  Lt. Hyde, noting that the Sheriff's Department policy is not to press charges for parental interference, refused to provide protection to the Plaintiffs.  Compl. at ¶ 175.

Defendant Michael Zurlo is the Saratoga County Sheriff, and Jeffrey Brown is the Undersheriff.  Compl. at ¶ 14.  They are being sued by Plaintiffs because of their failure to respond and hold Defendants Bennett and Veronica Smith accountable for their actions.  Compl. at ¶¶ 14, 16, 21.  They are alleged to be final policymakers for the Sheriff's office, and in that role they created a culture of neglect.  Compl. at ¶¶ 16, 21, 22.

Also listed as Defendants are individuals who are employed by either Saratoga County or Warren County Department of Human Services.   These include Defendants Christine Zimmerman, Conceta HMura, Carlye Magnusen, Ashley Callahan and Marlo Norton. Compl. at ¶ 72.  Callahan and Norton were caseworkers, and the remaining social service workers were their supervisors. Plaintiffs allegations are that the DHS Defendants did not refer 11 false allegations by Defendant Smith out to law enforcement, nor did they conduct any internal investigation; they disregarded significant evidence of educational, medical, and dental neglect; they failed to adhere to their internal guidelines; and that the Plaintiffs reached out to the supervisors on numerous occasions making complaints, but without those supervisors making any rectification of the alleged violations.   Compl. at ¶¶ 72, 74, 131, 233, 271, 322.   The

Plaintiffs rely upon the fact that Rensselaer County DSS "indicated" a report of abuse by Defendant Veronica Smith as evidence that the investigations of Warren and Saratoga County were faulty.

Also sued in the Complaint are Kevin Kolakowski and Meghan Warren, respectively, the Superintendent and the Administrator of the Mechanicville School District. Plaintiff Smith alleges that those Defendants failed to address reports of educational neglect involving the Smith children, who were being homeschooled; they relied on Defendant Veronica Smith's fraudulent reports of the children's education, rather than accede to Plaintiff's request to have the children independently tested; and they generally fostered a pattern of neglect and failed to take remedial action. Compl. at ¶ ¶ 79, 81, 271, 332. The City of Mechanicville is sued because it is, or should be, responsible for the School District.

In sum, Plaintiffs' claims rest on the alleged failure of the courts, police, social service staff and school officials to better intervene and prevent misconduct of private parties against them or the Smith children. This lack of diligent action by the local officials is said to have, *inter alia*, violated the Plaintiffs' due process rights.

Such a theory of constitutional liability, however, has already been rejected by the United States Supreme Court. In *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, Social Services had received information that the child was being abused by his father but ultimately released him back to his father's custody upon the finding that there was insufficient evidence of abuse. 489 U.S. 189, 192 (1989). It turned out that the father continued to abuse the child, resulting in permanent brain damage to the child,

Joshua. *Id.* at 193.  The Supreme Court rejected the mother's claim on behalf of the child and held that the failure of Social Services to remove Joshua from his father's custody, despite the defendants' alleged knowledge of abuse, did not constitute a violation of the due process clause because the person causing injury was a private citizen, and not a state actor. *Id*. at 202.  The Court noted that there was no affirmative obligation on the part of the state to provide protective services. *Id*. at 196-97.

Thereafter, the Supreme Court held that there was no due process right regarding the negligent enforcement of an order of protection by the police. *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 768-69 (2005) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its "substantive" manifestations. … Although the framers of the Fourteenth Amendment and the Civil Rights Act of 1871, 17 Stat. 13 (the original source of § 1983), did not create a system by which police departments are generally held financially accountable for crimes that better policing might have prevented, the people of Colorado are free to craft such a system under state law.").

Based upon the above stated precedent, the claims against the police officers, their supervisors, the school staff, social services employees and supervisors, predicated on their failure to properly investigate claims of abuse or custodial or parental interference; report and investigate false claims of abuse; or enforce or issue orders of protection, are without legal merit and do not survive initial review.  To the extent Plaintiffs attempt to predicate their procedural due process claim on the Saratoga and

- 29 -

Warren County Defendants' alleged failure to report abuse or neglect, as required under New York Social Services Law, that claim also fails to survive Court review. Although New York State law requires that mandated individuals report instances of suspected child abuse or maltreatment, such reporting is not constitutionally required. *Jones v. Nickens*, 961 F. Supp. 2d 475, 493 (E.D.N.Y. 2013). "State child protection legislation, even with procedural requirements "for the immediate classification and evaluation of child abuse reports, the timely initiation of an investigation, and the conduct of the investigation," does not create protected property or liberty interests when the statutory scheme "invest significant discretion in the [child protective workers] to determine both whether an investigation is warranted and what remedial action, if any, to pursue based on the results of the investigation." *Hilbert S. v. Cnty. of Tioga*, 2005 WL 1460316, at *11 (N.D.N.Y. June 21, 2005) (internal quotations and citations omitted).

### 7.   *Monell Liability and Supervisory Liability*

In addition to their substantive claims, the Plaintiffs attempt to assert liability pursuant to *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978), against Warren and Saratoga County, and the City of Mechanicville.   To demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and "(1) the existence of a municipal policy or custom ... that caused his injuries beyond merely employing the misbehaving officer[s]; and (2) a causal connection - an affirmative link - between the policy and the deprivation of his constitutional rights." *Harper v. City of New York*, 424 F. App'x. 36, 38 (2d Cir. 2011) (internal quotations and citations omitted).   A fundamental requirement of a *Monell*

claim is the establishment of an underlying constitutional violation.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799, (1986); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").  In the present case the Court is recommending the dismissal of all the federal claims and, as such, also recommends that any *Monell* claim be likewise dismissed.

For similar reasons the Court recommends the dismissal of claims against the Defendants that are premised upon supervisory liability.  That would include the claims against Hallenbeck, Carpenter, Zurlo, Heggen, Brown, Zimmerman, H'mura, Norton, Granger, and Hartnett.  Compl. at ¶¶ 14, 16, 2, 72, 268.  At the onset, it is important to note that the term 'supervisory liability' is a misnomer insofar as it implies respondeat superior liability; rather, to succeed, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (*quoting Ashcroft v. Iqbal*, 556 U.S. at 676.  Again, as the Court has recommended dismissal of the underlying federal claims for failure to state a claim, the causes of action against any supervisors necessarily fail as well.

### E.  Claims under the ADA and the Rehabilitation Act

The final federal claims alleged by Plaintiff Ethan Smith allege a violation of his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12131, *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Plaintiff alleges that he suffers

from various disabilities, including ADHD and Auditory Processing Delay, and that he was entitled to various accommodations during his court proceedings such as an ADA compliant notetaker, but that while he was initially granted that accommodation, it was latter revoked by Judge Pelagalli.   Compl. at ¶ 300.   When Plaintiff, during a proceeding, attempted to explain his auditory problems, Judge Wait's response was said to be dismissive and insensitive.  Compl. at ¶ 178.  Further, during a December 19, 2023 hearing , Judge Wait had Smith's notetaker (Plaintiff Dees) leave the courtroom. Compl. at ¶ 185.   While the Complaint references Defendant Heggen and Williams in connection with this claim, it makes no specific factual allegations against them.

The Plaintiff's ADA and Rehabilitation Act claims, which arise out of in-court conduct and decisions regarding the regulation of judicial proceedings, are barred by the *Rooker-Feldman* doctrine, judicial immunity, and by §1983's requirement that injunctive relief against a judge is barred unless a declaratory decree was violated, or declaratory relief was unavailable.  *Richter v. Connecticut Jud. Branch*, 2014 WL 1281444, at *10 (D. Conn. Mar. 27, 2014), *aff'd*, 600 F. App'x 804 (2d Cir. 2015). Additionally, neither statute provides for individual liability.  *See Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)).

### F.  State Court Claims

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the

lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having recommended dismissal of the federal claims over which the Court has original jurisdiction, the Court also recommends that the District Court decline to exercise its supplemental jurisdiction over any state law claims Plaintiffs may be asserting.

### III. CONCLUSION

For the forgoing reasons, the Court recommends that the Plaintiffs claims seeking to review and reject state court judgments that were rendered prior to the filing of the federal court action, be dismissed due to lack of jurisdiction pursuant to the *Rooker-Feldman* doctrine.

Next, the Court recommends that the District Court abstain from deciding issues related to the ongoing Family Court and Supreme Court proceedings pursuant to *Younger v. Harris*.

Third, the Court recommends dismissal of the claims alleging a violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. 1962, or a conspiracy to do the same.

Fourth, the Court recommends that the claims against the following individuals be dismissed, **with prejudice**, on grounds of judicial immunity or quasi-judicial immunity: Judge Paul Pelagalli; Saratoga Supreme Court Judges John Ellis and Dianne Freestone; City Court Judge Jeffrey Wait; Saratoga County Court Judge James Murphy; Administrative Judge for the Fourth Judicial District Judge Felix Catena; Appellate

Division Justices Elizabeth Garry and Christine Clark; Court Attorney Karla Conway; and Court-appointed experts Jaqueline Bashkoff and Dr. Mary O'Connor; and the private attorneys appointed by the Court to represent the Smith children - Jessica Vinson of Vella Carbone, LLP; Denise Rest-Tobin; Elena Tastensen; and Heather Corey-Mongue.

Fifth, the Court recommends dismissal **with prejudice** of the claims against the government attorneys involved in the court proceedings or that were integral to the litigation process: Samuel Maxwell, Emily Williams, Michelle Granger, and Michael Hartnett.

Sixth, the Court recommends that the claims involving the following Defendants be dismissed **with prejudice** on the grounds of witness immunity, insofar as the claims against them are based upon their testimony or information provided to the Court: Jillian Knox; Dr. Bashkoff; Dr. O'Connor; Veronica Smith; and Denise Rista-Tobin.

Seventh, the Court recommends that all other federal claims against the remaining Defendants be dismissed for the reasons set forth above.

Eighth, the Court recommends that the District Court decline to exercise supplemental jurisdiction over the remaining state law claims.

Unless specifically stated otherwise, several of the above recommendations of dismissal are based primarily on pleading deficiencies and not necessarily on the viability of the claims intended to be stated. Although the Court recommends dismissal of such claims and Defendants, alternatively, in light of Plaintiffs' pro se status, the Court recommends that on those claims not subject to dismissal with prejudice, the

Court should afford Plaintiffs the opportunity to file an amended complaint if they desire to proceed.  Should Plaintiffs be directed by the District Judge to file an amended complaint, I offer the following guidance.  Any such amended complaint, which shall supersede and replace in its entirety the original Complaint filed by Plaintiffs, must contain a caption that clearly identifies, by name, each individual that Plaintiffs are suing in the present lawsuit and must bear the case number assigned to this action.  The body of Plaintiffs' amended complaint must contain sequentially numbered paragraphs containing only one act of misconduct per paragraph.  Thus, if Plaintiffs claim that their civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, they should include a corresponding number of paragraphs in the amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Importantly, any such pleading must be "*concise and direct*."  Fed. R. Civ. P. 8(d) (emphasis added).

Plaintiffs' amended complaint shall also assert claims against each and every defendant named in such complaint; any defendant not named in such pleading shall not be a defendant in the instant action.  Plaintiff is further cautioned that no portion of any prior complaint shall be incorporated into their amended complaint by reference. Plaintiffs shall state in the single amended complaint all claims that they wish this Court

to consider as a basis for awarding Plaintiff relief herein; and their failure to file such a pleading will result in dismissal of this action without further Order of the Court.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Complaints be **DISMISSED** as set forth above; and it is

**ORDERED**, that the Motions for Leave to File Electronically are **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

**SO ORDERED**.

Dated:  March 11, 2024
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

- 36 -