**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JENNIFER LYNN DEES and ETHAN**
**DAVIS SMITH,**

                                        **Plaintiffs,**

         **vs.**                                        **1:24-CV-1**
                                                        **(MAD/DJS)**
**MICHAEL ZURLO, et al.,**

                                        **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**JENNIFER LYNN DEES and**
**ETHAN DAVIS SMITH**
16 Grant Hill Road
Clifton Park, New York 12065
Plaintiffs, _pro se_

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.  INTRODUCTION

On January 2, 2024, Plaintiffs Jennifer Lynn Dees and Ethan Davis Smith commenced this

action, _pro se_, against fifty-three Defendants.  _See_ Dkt. No. 1.  In their 170-page complaint,

Plaintiffs allege that Defendants have deprived them of various constitutional rights because of

Defendants' roles and involvement in state-court custody, support, and/or criminal disputes.  _See_

_id._  Plaintiffs submitted applications to proceed _in forma pauperis_ ("IFP") and for leave to file

electronically.  _See_ Dkt. Nos. 2, 3, 4, 5.

On March 11, 2024, Magistrate Judge Daniel J. Stewart issued an Order granting

Plaintiffs' IFP motions.  _See_ Dkt. No. 11.  Magistrate Judge Stewart also issued a Report-

Recommendation and Order reviewing Plaintiffs' complaint pursuant to 28 U.S.C. § 1915(e) and recommending that the complaint be dismissed.  *See* Dkt. No. 12.  He also ordered that Plaintiffs be denied leave to file electronically.  *See id.*

Plaintiffs objected to every single aspect of the Report-Recommendation and Order.  *See* Dkt. No. 13.[1]  "Generally, when a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review."  *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 683 (N.D.N.Y. 2015) (citing FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C)).  "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.'"  *Id.* (quoting N.D.N.Y. L.R. 72.1(c)) (footnote omitted).  "When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review."  *Id.* at 684 (citations omitted).  "Similarly, when an objection merely reiterates the same arguments made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review."  *Id.* (footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

As Plaintiffs are proceeding *pro se*, the Court must review their complaint under a more lenient standard.  *See Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003).  The Court

---

[1] Plaintiffs' objections are thirty-eight pages.  *See* Dkt. No. 13.  Local Rule 71.2(c) instructs that "[o]bjections may not exceed twenty-five (25) pages without the Court's prior approval." N.D.N.Y. L.R. 72.1(c).  The Court will consider the entirety of Plaintiffs' objections because they are proceeding *pro se*.  However, the Court warns Plaintiffs that future compliance with the Federal Rules, the Court's Local Rules, and the undersigned's Individual Rules is required.

must "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Thus, "a document filed *pro se* is 'to be liberally construed,' and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Although the court has the duty to show liberality towards pro se litigants, . . . there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis." *Moreman v. Douglas*, 848 F. Supp. 332, 333-34 (N.D.N.Y. 1994) (internal citations omitted).

## II. BACKGROUND

Plaintiffs summarize their claims at the beginning of their complaint as allegations against "a broad spectrum of governmental entities and private defendants" including judges, attorneys, family members, the Saratoga County Sheriff's Office, district attorneys' offices, departments of social service, Warren County, Saratoga County, and the City of Mechanicville. Dkt. No. 1 at ¶ 2. The complaint concerns New York State Family Court and County Court proceedings and events related to custody and supervision of Plaintiff Smith's children. The proceedings are primarily between Plaintiff Smith and Defendant Veronica Smith—the mother of his children. Plaintiff Dees is Plaintiff Smith's partner. Plaintiffs allege that the Defendants engaged in a conspiracy to violate their constitutional rights as well as Plaintiff Smith's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

For a fuller recitation of the relevant background information, the Court refers to Plaintiffs' complaint and Magistrate Judge Stewart's Report-Recommendation and Order. *See generally* Dkt. No. 1; *see also* Dkt. No. 12 at 4-5.

## III.   DISCUSSION

### A.   *Rooker-Feldman* Doctrine

In his Report-Recommendation and Order, Magistrate Judge Stewart first addressed the *Rooker-Feldman* doctrine, under which federal courts are divested of jurisdiction over claims that seek to overrule state court determinations. *See* Dkt. No. 12 at 8-9; *see also Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009). Magistrate Judge Stewart concluded that because Plaintiffs' complaint seeks to overturn state-court custody and support decisions, the Court's review of Plaintiffs' claims is barred by the *Rooker-Feldman* doctrine. *See* Dkt. No. 12 at 8. Plaintiffs object, arguing that because they have appealed the state court decisions, and those appeals have not been decided, the *Rooker-Feldman* doctrine does not apply. *See* Dkt. No. 13 at 1-3.

"The Supreme Court has explained that *Rooker-Feldman* bars 'a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court.'" *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). "*Rooker-Feldman* 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 67-68 (quotation omitted). "The doctrine 'does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.'" *Id.* at 68 (quotation omitted).

The doctrine "'applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.'" *Id.* (quoting *Lance v. Dennis*, 546 U.S. 459, 466 (2006)).  In adopting "the unanimous position of every other circuit court to address it[,]" the Second Circuit in *Hunter* held that "[i]f a federal-court plaintiff's state-court appeal remains pending when she files her federal suit, the state-court proceedings have not ended and *Rooker-Feldman* does not apply." *Id.* at 70 (quoting *Butcher v. Wendt*, 975 F.3d 236, 246 (2d Cir. 2020) (Menashi, J., concurring in part and concurring in the judgment)).

In their objections, Plaintiffs list eight "currently pending" appeals.  Dkt. No. 13 at 1-2.  The relevant inquiry is whether those appeals were pending when they filed their complaint with this Court on January 2, 2024.  *See* Dkt. No. 1; *see also Hunter*, 75 F.4th at 71 (quoting *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 163 (2d Cir. 2001)) ("[F]ederal courts 'assess[ ] jurisdiction . . . as of the moment the complaint was filed'").  Upon the Court's review of the state court dockets, seven of the eight appeals that Plaintiffs list were pending at the time they filed their complaint in this Court.  *See Smith v. Smith*, CV-23-1726 (3d Dep't 2023); *Smith v. Smith*, CV-23-1805 (3d Dep't 2023); *Veronica LL. v. Ethan LL.*, CV-23-1874 (3d Dep't 2023); *Smith v. Smith*, CV-23-1265 (3d Dep't 2023); *Smith v. Smith*, CV-23-1642 (3d Dep't 2023); *Matter of Smith v. Smith*, CV-23-2087 (3d Dep't 2023); *Matter of Smith v. Smith*, CV-23-2195 (3d Dep't 2023); *Matter of Ethan LL v. Veronica LL*, CV-24-0306 (3d Dep't 2024).  Plaintiffs also contend that their "Article 78 action CV-23-1727, against multiple defendants still remains open." Dkt. No. 13 at 2.  Upon the Court's search of that case number in the New York State Unified Court System Electronic Filing System, it appears that the final entry is an "order" dated November 21, 2023.  *See Ethan Smith et. al. v. Karen Heggen et. al.*, CV-23-1727 (3d Dep't

2023), Dkt. No. 36.  The Court is unable to view the document as it is sealed.  *See id.*  Plaintiffs

do not contend that they appealed this "order" from the Appellate Division.

To the extent Plaintiffs have not appealed Supreme Court, Family Court, or Appellate

Division decisions, and such decisions are final, the *Rooker-Feldman* doctrine precludes the

Court's consideration of the decisions in which Plaintiffs lost.  Insofar as appeals are pending in

the Appellate Division from Supreme Court or Family Court decisions, Plaintiffs are correct that

the *Rooker-Feldman* doctrine does not apply.  *See Hunter*, 75 F.4th at 67-71.  However, even

where the *Rooker-Feldman* doctrine does not apply, as thoroughly set forth in Magistrate Judge

Stewart's Report-Recommendation and Order, Plaintiffs' complaint must be dismissed on

numerous other grounds.

**B.**      ***Younger* Abstention**

Magistrate Judge Stewart next addressed the *Younger* abstention doctrine which mandates

that federal courts abstain from interfering in claims seeking declaratory or injunctive relief over

ongoing state proceedings.  *See* Dkt. No. 12 at 10 (citing *Younger v. Harris*, 401 U.S. 37, 43-44

(1971)).  Magistrate Judge Stewart explained that *Younger* abstention does not apply to claims

seeking only monetary relief, as Plaintiffs do in this case, but noted that the doctrine implicates

"domestic relations" abstention, which "is based upon a policy dictating that the states have

traditionally adjudicated marital and child custody disputes, developing 'competence and expertise

in adjudicating such matters, which the federal courts lack.'"  Dkt. No. 12 at 10 (quoting *Thomas

v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993)).

Plaintiffs objected, arguing that they are not seeking declaratory or injunctive relief, so

*Younger* abstention does not apply.  *See* Dkt. No. 13 at 5.  Plaintiffs contends that "[t]he principle

of Younger abstention typically applies in scenarios where significant state interests are at stake

and does not extend to precluding federal jurisdiction merely due to possible inconsistencies with

state court rulings." *Id.* at 6.

> *Younger* demands that
>
>> federal courts [] decline to exercise jurisdiction in three []
>> exceptional categories of cases: "First, *Younger* preclude[s] federal
>> intrusion into ongoing state criminal prosecutions.  Second, certain
>> civil enforcement proceedings warrant[ ] abstention.  Finally,
>> federal courts [must] refrain[ ] from interfering with pending civil
>> proceedings involving certain orders uniquely in furtherance of the
>> state courts' ability to perform their judicial functions."

*Trump v. Vance*, 941 F.3d 631, 637 (2d Cir. 2019), *aff'd and remanded*, 591 U.S. 786 (2020)

(quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)).  "*Younger* abstention is [] an

'exception to th[e] general rule' that 'a federal court's obligation to hear and decide a case is

virtually unflagging,' . . . and the doctrine is also subject to exceptions of its own in cases of bad

faith, harassment, or other 'extraordinary circumstances.'" *Id.* (quotations omitted).  "[T]he

*Younger* doctrine is inappropriate where the litigant seeks money damages for an alleged violation

of § 1983." *Rivers v. McLeod*, 252 F.3d 99, 101-02 (2d Cir. 2001).

   The Second Circuit, in *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990),

explained that "[a]lthough matrimonial actions may ordinarily be instituted in federal court on

diversity grounds, the Supreme Court in *Barber v. Barber*, 62 U.S. . . 582, 584 . . . (1859), went

so far as to disclaim all federal subject matter jurisdiction for some classes of matrimonial

actions." *Id.*  This is known as the domestic relations exception to federal jurisdiction, *i.e.*, federal

courts should not exercise jurisdiction over matrimonial actions brought under diversity grounds.

"[H]owever, the scope of this matrimonial exception to federal jurisdiction is 'rather narrowly

confined,' . . . only 'where a federal court is asked to grant a divorce or annulment, determine

support payments, or award custody of a child' does it generally decline jurisdiction pursuant to

the matrimonial exception." *Id.* (quotations omitted).  The Second Circuit, in *American Airlines*, expanded the domestic relations exception, noting that "even if subject matter jurisdiction lies over a particular matrimonial action, federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field." *Id.*  "A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Id.* (citations omitted).  This is known as the domestic relations abstention doctrine.  *See Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) ("Although the domestic relations '*exception*' to subject matter jurisdiction . . . does not apply in federal-question cases, the domestic relations *abstention* doctrine articulated in *American Airlines* does").

The abstention doctrine has been utilized across the country by federal courts removing themselves from considering a state court domestic relations matter.  *See Deem*, 941 F.3d at 623 (collecting cases) (citing, *inter alia*, *DeMauro v. DeMauro*, 115 F.3d 94, 99 (1st Cir. 1997) ("[A]bstention by use of a stay may be permissible where a RICO action is directed against concealment or transfer of property that is the very subject of a pending divorce proceeding")); *see also Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quotation omitted) ("[W]e independently conclude that Falco's case presents circumstances that qualify as 'exceptional' under *Sprint* and that *Younger* abstention was therefore warranted.  Falco's federal lawsuit implicates the way that New York courts manage their own divorce and custody proceedings—a subject in which 'the states have an especially strong interest'").

Here, "the domestic relations *exception* clearly does not apply to this case because it is 'before this Court on federal question jurisdiction, not diversity.'" *Deem*, 941 F.3d at 623 (quoting

*Williams v. Lambert*, 46 F.3d 1275 (2d Cir. 1995)) (emphasis added).  However, *abstention* is

appropriate because Plaintiffs' complaint concerns family court disputes over custody, visitation,

and protective orders.  *See Reeves v. Reeves*, No. 22-CV-2544, 2022 WL 1125267, *1 (S.D.N.Y.

Apr. 14, 2022); *Stumpf v. Maywalt*, 605 F. Supp. 3d 511, 518 (W.D.N.Y. 2022); *Dasler v. Knapp*,

No. 2:21-CV-135, 2023 WL 8354441, *9 (D. Vt. Oct. 13, 2023).

Plaintiffs are correct that abstention is usually exercised in scenarios where significant

state interests are at stake.  *See* Dkt. No. 13 at 6; *see also Sprint*, 571 U.S. at 72-73.  This is such a

case because states are traditionally tasked with addressing domestic matters.  *See Deem*, 941

F.3d at 624 (quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890) ("[T]he existence of a distinct

abstention doctrine for certain domestic relations disputes is supported by the Supreme Court's

longstanding recognition — in a non-diversity case involving a child custody dispute — that '[t]he

whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws

of the states, and not to the laws of the United States'"); *see also Amato v. McGinty*, No. 1:17-CV-

593, 2017 WL 9487185, *10 (N.D.N.Y. June 6, 2017).  Thus, the Court will abstain from

exercising jurisdiction over Plaintiffs' complaint insofar as it concerns state court domestic

relations matters.

## C.     RICO Claims

Magistrate Judge Stewart concluded that Plaintiffs failed to set forth a cognizable claim

under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et*

*seq.*, because, as explained in *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018), RICO cannot be used to

address litigation activity.  *See* Dkt. No. 12 at 11-14.  Plaintiffs object, arguing that *Kim* is

inapplicable because that case involved a single instance of litigation activity, whereas their case

concerns "actions [that] have been concertedly executed over a period of four years."  Dkt. No. 13

at 7.  Plaintiffs rely on Fifth and Eleventh Circuit caselaw to argue that their claims support a

RICO violation.  *See id.* at 6-7.  Plaintiffs also contend that Magistrate Judge Stewart's decision

supports their assertion of corruption in the judiciary because he took sixty-nine days to issue his

Report-Recommendation and Order "as opposed to the swifter resolutions typically observed in

cases under the same magistrate."  *Id.* at 8.

 As an initial matter, Plaintiffs' reliance on out-of-circuit case law is not binding on this

Court.  *See Goldstein v. Pro. Staff Cong./CUNY*, 643 F. Supp. 3d 431, 443, n.6 (S.D.N.Y. 2022),

*aff'd*, 96 F.4th 345 (2d Cir. 2024) (discussing "vertical stare decisis").  Further, the Court finds no

error in the time Magistrate Judge Stewart took to issue his Report-Recommendation and Order.

Magistrate Judge Stewart was tasked with reviewing a 170-page complaint and a forty-eight-page

RICO statement.  *See* Dkt. Nos. 1, 9.  A two-month time frame to do so is not inappropriate, let

alone conspiratorial, where Magistrate Judge Stewart must balance a heavy case load.

 As to the substance of Plaintiffs' RICO claims and their objections, Plaintiffs are correct

that *Kim* concerned one federal litigation alleged to be conspiratorial.  *See Kim*, 884 F.3d at 101-

02.  In that case, the Second Circuit specifically "decline[d] to reach the issue of whether all

RICO actions based on litigation activity are categorically meritless."  *Id.* at 105.  Rather, the

Second Circuit held only that "where . . . a plaintiff alleges that a defendant engaged in a single

frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable

RICO predicate act."  *Id.*

 The Second Circuit distinguished *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d

413 (S.D.N.Y. 2010) wherein the court allowed a RICO claim to proceed because the plaintiff

pled "a pattern of racketeering activity that included 'at least twenty allegedly fraudulent

statements and eighteen acts involving use of the mail and wires over three years, in furtherance

of the alleged fraud.'" *Kim*, 884 F.3d at 105 (quoting *Sykes*, 757 F. Supp. 2d at 425).  This court has also noted that "the Second Circuit decision in *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992), allows RICO claims based on abusive litigation tactics involving conduct external to any of the particular disputes between the litigants in improperly filed and litigated civil actions." *Carroll v. U.S. Equities Corp.*, No. 1:18-CV-667, 2020 WL 11563716, *9 (N.D.N.Y. Nov. 30, 2020).

The Court concludes that *Kim* does not automatically preclude Plaintiffs' purported RICO claim just because Plaintiffs' complaint concerns litigation activity as the alleged activity is conduct occurring over four years and dozens of individuals.  However, Magistrate Judge Stewart did not state that such preclusion was automatic.  Rather, he applied the "reasons" and "principle[s]" set forth by *Kim* to Plaintiffs' complaint.  Dkt. No. 12 at 12-13.  The Court agrees with such application.

"To state a claim for RICO conspiracy under § 1962(d), the plaintiff must also 'allege the existence of an agreement to violate RICO's substantive provisions.'" *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (quoting *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018)); *see also First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 164 (2d Cir. 2004) (concluding that where the plaintiffs failed to "adequately allege a substantive violation of RICO," the district court properly dismissed allegations of "a RICO conspiracy in violation of 18 U.S.C. § 1962(d)"); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *as corrected*, 93 F.3d 1055 (2d Cir. 1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations").

"To state a claim of a substantive RICO violation under § 1962(c), a plaintiff must allege, among other things, two or more predicate acts 'constituting a pattern' of 'racketeering activity.'" *Butcher*, 975 F.3d at 241 (quoting *Williams*, 889 F.3d at 124).  "The RICO statutory scheme defines 'racketeering activity' to include 'a host of criminal offenses, which are in turn defined by federal and state law.'" *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 168 (E.D.N.Y. 2010), *aff'd*, 443 Fed. Appx. 582 (2d Cir. 2011) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc.*, 187 F.3d 229, 242 (2d Cir. 1999)).  "Specifically, the RICO statute defines 'racketeering activity' as including any 'act' indictable under various specified federal statutes, including the mail and wire fraud statutes." *Id.* (quoting 18 U.S.C. § 1961(1)).  "'Pattern' is defined by the statute as 'at least two acts of racketeering activity' within a ten-year period." *Id.* (quoting 18 U.S.C. § 1961(5)).

In their RICO statement, Plaintiffs allege that Defendants violated 18 U.S.C. §§ 1341 (relating to mail fraud), 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1503 (relating to financial institution fraud), 1510 (relating to obstruction of criminal investigations), 1513 (relating to retaliating against a witness, victim, or an informant), and 1951 (relating to interference with commerce, robbery, or extortion).  *See* Dkt. No. 9 at 18-19.

Plaintiffs' complaint and statement fail to sufficiently allege these predicate acts.  Plaintiffs allege that Defendants committed mail fraud "by a series of fraudulent support collection letters" which "were issued despite knowledge of fraud and without proper investigation into the claims." Dkt. No. 9 at 22.  They contend that Defendants committed wire fraud and financial institution fraud by sending bills and enforcing child support collection orders.  *See id.*  Plaintiffs state that they have been mailed fraudulent protection orders.  *See id.* at 23.  They aver that they were e-mailed "fraudulent legal documents including affirmations, affidavits, and protection orders."  *Id.*

at 25.  Plaintiffs also allege that "Defendants each obstructed justice by interfering in state court matters ostensibly to undermine the plaintiffs' federal court case and hinder U.S. attorneys' investigations." *Id.* at 19.  They state that Defendants have obstructed justice by "tampering with trial proceedings and witnesses, failing to file pertinent motions into the court record, and deliberately withholding compliance with legally mandated FOIL requests." *Id.* at 20-21. Plaintiffs allege that Defendants "engaged in coercive and illicit practices to extort payments from the plaintiff.  The purported extortion involved the utilization of duress, public denigration, threats of incarceration, the manipulation of child custody, tolerance of ongoing abuse, initiation of vindictive charges and protective orders, unlawful intimidation, and the fabrication of federal crime accusations." *Id.* at 21.

Although *Kim* concerned only a single litigation, the principles underlying the Second Circuit's decision are applicable to Plaintiffs' claims because their claims stem entirely from state family and criminal court proceedings.  Allowing such claims to be the base underlying RICO violations "would erode the principles undergirding the doctrines of res judicata and collateral estoppel, as such claims frequently call into question the validity of documents presented in the underlying litigation as well as the judicial decisions that relied upon them." *Kim*, 884 F.3d at 104 (quotation omitted).

The allegations in Plaintiffs' complaint and RICO statement are similar to those in cases which have not allowed a RICO claim to proceed where the allegations concern only litigation activity.  Plaintiffs have not alleged any conduct that is unrelated to state-court litigation. *See Wang v. Yien-Koo King*, No. 18-CV-8948, 2019 WL 1763230, *7 (S.D.N.Y. Apr. 22, 2019) ("[B]ecause the Court has held that [the p]laintiffs have not adequately alleged RICO claims premised on the sale of restrained artwork or the proceedings in probate court, [the p]laintiffs'

RICO claim would be rooted solely in litigation-related mail or wire fraud predicates --

specifically, the use of mail and wires in filing legal documents"); *Weaver v. New York State Off.*

*of Ct. Admin.*, No. 22-CV-559, 2023 WL 2500390, *9 (N.D.N.Y. Mar. 14, 2023); *Rajaratnam v.*

*Motley Rice, LLC*, 449 F. Supp. 3d 45, 69 (E.D.N.Y. 2020); *Robinson v. Vigorito, Barker,*

*Patterson, Nichols & Porter, LLP*, No. 19-CV-2914, 2019 WL 13417190, *3 (E.D.N.Y. July 31,

2019); *Verschleiser v. Frydman*, No. 22-CV-7909, 2023 WL 5835031, *13 (S.D.N.Y. Sept. 7,

2023) (citing, *inter alia*, *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F.

Supp. 2d 153, 174 (E.D.N.Y. 2010); *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 161-62 (D. Conn.

2000)).

Plaintiffs' complaint is also distinguishable from cases where RICO claims have been

permitted to proceed. For example, in *Carroll*, the plaintiff alleged that the defendants initiated

thousands of lawsuits against the plaintiff and unnamed individuals for fraudulent debts in order

to recover monetary default judgments. *Carroll*, 2020 WL 11563716, at *3. The court noted that

many acts as alleged by the plaintiff "involved matters beyond proper legal representation and

went beyond any of the particular disputes between the litigants" "such as buying uncollectable

debts that lacked proof that the debts were owed, conspiring to use a process serving firm that

engaged in sewer service to ensure that defendants would not contest the debt-collection actions,

using an individual who filed false affidavits of merit in every case, and pressuring defendants to

compromise on illegally obtained default judgments were actions external to the individual suits

in the state courts." *Id.* at *9. The court concluded that the "case is more closely aligned with

*Sykes* than *Kim*." *Id.* In *Sykes*, "[t]he gravamen of [the] racketeering activity was not so much

litigation activities, as it was the use of courts to obtain default judgments en masse against

defendants who had not been served. The 'litigations' in *Sykes* were mere perfunctory steps to

cash in on a portfolio of defaulted debts." *Rajaratnam*, 449 F. Supp. 3d at 71; *see Sykes*, 757 F. Supp. 2d at 425.

Here, the gravamen of Plaintiffs' complaint concerns state court litigation. There are no allegations in either the complaint or RICO statement that are entirely unrelated to litigation. The Defendants are judges, attorneys, law firms, or the mother of Plaintiff Smith's children—who is the primary adversary in the state court cases. Allowing a RICO violation to proceed under these circumstances would, as the Second Circuit cautioned against, "'chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts' because 'any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability.'" *Kim*, 884 F.3d at 105 (quotation omitted). Thus, the Court concludes that Plaintiffs' complaint fails to state a cognizable RICO claim.

### D.   Absolute Judicial Immunity

Plaintiffs seek to bring claims under 42 U.S.C. §§ 1983 and 1985 for alleged constitutional violations against numerous state court judges: Defendants Paul Pelagalli, John Ellis, Jeffrey Wait, Felix Catena, Dianne Freestone, James Murphy, and Elizabeth Garry. *See* Dkt. No. 1 at ¶¶ 24-47. Magistrate Judge Stewart correctly explained that judges are typically immune from such actions. *See* Dkt. No. 12 at 14. Plaintiffs object, arguing that the judicial Defendants' conduct, as outlined in the complaint, constitutes "a significant departure from their judicial responsibilities." Dkt. No. 13 at 11.

"Absolute immunity for judges is 'firmly established' for acts 'committed within their judicial jurisdiction.'" *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)). "Absolute immunity for a judge performing his or her judicial functions is conferred in order to insure 'that a judicial officer, in exercising the authority

vested in him shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 123 (2d Cir. 2020), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). "Entitlement to absolute immunity does not depend on the individual's title or on the office itself. . . . A judge may perform tasks that are not essentially judicial, such as supervising and managing court employees, which do not warrant absolute immunity . . .; on the other hand, such immunity may be warranted for a person who is not a judge but whose duties are quasi-judicial." *Id.* at 124 (citations omitted). "Judicial acts principally involve adjudication of particularized, existing issues." *Id.* "Thus, some functions may be viewed as judicial acts when performed in the context of a particular case but as administrative when performed for the purpose of overall management in anticipation of future cases." *Id.*

"In determining a jurisdictional issue that depended on 'whether a particular proceeding before another tribunal was truly judicial,' . . . the Supreme Court stated that the form of the proceeding is less significant than the proceeding's nature and effect." *Id.* (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 n.13, 478 (1983)). "Judicial immunity is overcome in only two circumstances: (1) 'a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity'; and (2) 'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" *McCluskey v. Roberts*, No. 20-4018, 2022 WL 2046079, *5 (2d Cir. June 7, 2022) (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)).

Plaintiffs' allegations against the judicial Defendants stem entirely from the judge's orders and decisions or conduct in controlling their courtroom. *See* Dkt. No. 1 at ¶¶ 24-47. Although

16

Plaintiffs disagree with the judge's actions or inactions related to protective orders, custody orders, and court proceedings, those actions are entirely within the scope of the judges' jurisdiction.  Plaintiffs have not presented more than conclusory allegations to establish that the judicial Defendants were acting absent all jurisdiction.  They are, therefore, entitled to absolute immunity for that conduct.  *See, e.g.*, *King v. New York State*, No. 23-CV-3421, 2023 WL 5625440, *4 (E.D.N.Y. Aug. 31, 2023); *Wilkins v. Soares*, No. 8:20-CV-00116, 2020 WL 5238598, *4 (N.D.N.Y. May 27, 2020); *Viola v. Bryant*, No. 3:17-CV-00853, 2017 WL 2676407, at *4 (D. Conn. June 21, 2017); *Topolski v. Wrobleski*, No. 5:13-CV-0872, 2014 WL 2215761, *5 (N.D.N.Y. May 29, 2014).

### 1.  *Sovereign Immunity*

As an alternative to absolute judicial immunity, Magistrate Judge Stewart explained in a footnote that the judicial Defendants were also protected by sovereign immunity.  *See* Dkt. No. 12 at 18, n.3.  Plaintiffs object to the application of sovereign immunity because "their allegations are distinctly targeted at the defendants in their personal capacities."  Dkt. No. 13 at 21.

"The Eleventh Amendment states: 'The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" *Gollomp v. Spitzer*, 568 F.3d 355, 365 (2d Cir. 2009) (quoting U.S. Const. amend. XI).  "[T]he Eleventh Amendment means that, 'as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.'"  *Id.* at 366 (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)).

17

"The Unified Court System, or 'UCS,' is the name for the entire New York State judiciary." *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 95 (2d Cir. 2021).  "[A] lawsuit against the Unified Court System is 'in essence one for the recovery of money from the state, [so that] the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit.'" *Gollomp*, 568 F.3d at 368 (quotation omitted).  As Magistrate Judge Stewart explained, the Second Circuit has recently reaffirmed the application of Eleventh Amendment sovereign immunity to New York State judges.  *See* Dkt. No. 12 at 18, n.3 (citing *Bythewood v. New York*, No. 22-CV-2542, 2023 WL 6152796, *1 (2d Cir. Sept. 21, 2023) ("We agree with the district court that Bythewood's claims against the State of New York and the Judicial Defendants are barred by Eleventh Amendment sovereign immunity")).

As the Court has already concluded that the judicial Defendants were acting within their roles as judges, the Court concludes that they are entitled to sovereign immunity.  To the extent Plaintiffs argue that they seek to sue the judicial Defendants in only their individual capacities, such claims "are [] barred by absolute judicial immunity." *Bythewood*, 2023 WL 6152796, at *2.

### 2.  Court Attorney

Magistrate Judge Stewart concluded that Defendant Karla Conway, Judge Pelagalli's court attorney, is also entitled to absolute judicial immunity.  *See* Dkt. No. 12 at 19.  In Plaintiffs' objections, they state that Conway was "acting beyond her judicial capacity and outside her jurisdiction by orchestrating these unauthorized hearings and issuing void orders when she had no legal authority to do so." Dkt. No. 13 at 14.

Law clerks and court attorneys are entitled to absolute immunity.  *See Jackson v. Pfau*, 523 Fed. Appx. 736, 737-38 (2d Cir. 2013) (affirming dismissal of Section 1983 claims against judicial law clerk, the N.Y.S. Chief Administrative Judge, court attorneys, and the Chief Clerks of

several state courts, finding that the "defendants were entitled to judicial immunity[] because [the] allegations against each of them concerned actions that were judicial in nature or closely related to the judicial process"); *see also Gollomp,* 568 F.3d at 365; *Fishman v. Off. of Ct. Admin. New York State Cts.*, No. 18-CV-282, 2020 WL 1082560, *6 (S.D.N.Y. Mar. 5, 2020), *aff'd*, No. 20-1300, 2021 WL 4434698 (2d Cir. Sept. 28, 2021).

Plaintiffs' allegations against Conway relate solely to "orders and statements in court." Dkt. No. 1 at ¶ 122.  Although Plaintiffs argue otherwise, their allegations relate entirely to work performed as an extension of Judge Pelagalli such that Conway is entitled to absolute immunity.

### E.    Quasi-Judicial Immunity

Magistrate Judge Stewart next addressed the claims against court-appointed psychologists—Defendants O'Connor and Bashkoff, and court-appointed attorneys for Plaintiff Smith's children—Defendants Carbone, Tastensen, and Corey-Mongue.  *See* Dkt. No. 12 at 19-20.  Magistrate Judge Stewart concluded that the psychologists and attorneys were entitled to quasi-judicial immunity.  *See id.*

Plaintiffs argue that the psychologists should not be entitled to immunity because of "their active participation in a conspiracy."  Dkt. No. 13 at 22.  Similarly, Plaintiffs contend that the attorneys should not be afforded immunity because of "their repeated violations of constitutional rights and legal statutes."  *Id.* at 23.  Plaintiffs state that the "attorneys actively campaign and participate in fundraisers for judges who oversee their appointments and approve their billings." *Id.*[2]

---

[2] Magistrate Judge Stewart also addressed court-appointed attorney Defendant Tobin.  *See* Dkt. No. 12 at 19-20.  Plaintiffs clarify that Defendant Tobin was not an attorney for a child.  *See* Dkt. No. 13 at 23.  Rather, Tobin represented Defendant Smith.  *See* Dkt. No. 1 at ¶¶ 58-59, 162. Insofar as Tobin was retained counsel, "defense attorneys—even if court-appointed or public defenders—do not act under color of State law when performing traditional functions of counsel."

"A private actor may be afforded the absolute immunity ordinarily accorded judges acting within the scope of their jurisdictions if his role is 'functionally comparable' to that of a judge, . . . or if the private actor's acts are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004) (quoting *Butz v. Economou*, 438 U.S. 478, 513, (1978); citing *Scotto v. Almenas*, 143 F.3d 105, 111012 (2d Cir. 1998); *Dorman v. Higgins*, 821 F.2d 133, 136-38 (2d Cir. 1987)) (additional quotation marks omitted).

The Second Circuit has affirmed application of quasi-judicial immunity to a "law guardian and her director." *Yapi v. Kondratyeva*, 340 Fed. Appx. 683, 685 (2d Cir. 2009).  This is because law guardians or attorneys for children serve "serve[] as an 'arm of the court,' or act[] as an 'integral part[ ] of the judicial process.'" *Holland v. Morgenstern*, 12-CV-4870, 2013 WL 2237550, *4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998)).  The same can be said for court-appointed psychologists.  *See Vargas v. Mott*, No. 21-CV-6165, 2022 WL 3236744, *3 (W.D.N.Y. July 13, 2022) ("[P]sychiatrists who perform court-ordered examinations enjoy absolute quasi-judicial immunity").  Because these Defendants were appointed by the court and performing court-related functions, they are afforded quasi-judicial immunity.  *See Cherner v. Westchester Jewish Cmty. Servs., Inc.*, No. 20-CV-8331, 2022 WL 596074, *4 (S.D.N.Y. Feb. 28, 2022), *aff'd*, No. 22-642, 2022 WL 17817882 (2d Cir. Dec. 20, 2022); *Wilson v. Wilson-Polson*, No. 09-CV-9810, 2010 WL 3733935, *7 (S.D.N.Y. Sept. 23, 2010), *aff'd*, 446 Fed. Appx. 330 (2d Cir. 2011); *Thomas v. Martin-Gibbons*, No. 19-CV-7695, 2020 WL 5026884, *7 (S.D.N.Y. Aug. 25, 2020).

**F.    Government Attorney Immunity**

---

*Krug v. McNally*, 488 F. Supp. 2d 198, 200 (N.D.N.Y. 2007), *aff'd*, 368 Fed. Appx. 269 (2d Cir. 2010).  Therefore, Plaintiffs' claims against Tobin must be dismissed for failure to plead state action.

Magistrate Judge Stewart addressed the immunity typically afforded to government attorneys when acting as an advocate of a state. *See* Dkt. No. 12 at 21. He concluded that such immunity should apply to Defendants Samuel Maxwell, Emily Williams, Michelle Granger, and Michael Hartnett as district and county attorneys. *See id.* Plaintiffs contend that Defendants William and Maxwell are not entitled to immunity because they engaged in malicious prosecution. *See* Dkt. No. 13 at 23-24. As to Hartnett and Granger, Plaintiffs argue that immunity should not be afforded because their "alleged conduct represents a severe misuse of their positions and constitutes active participation in a broader conspiracy to violate the plaintiffs' rights." *Id.* at 25. Plaintiffs assert that the attorneys requested illegal protective orders, withheld evidence, revoked Plaintiff Smith's drivers license, and refused to investigate Plaintiffs' allegations of fraud. *See id.* at 23-25.

"Absolute immunity protects government officials from suit arising out of acts associated with their 'function as an advocate.'" *Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 108 (N.D.N.Y. 2023) (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 378 (S.D.N.Y. 2021)). "Absolute immunity extends to 'government attorneys defending civil suits' and 'government attorneys who initiate civil suits.'" *Id.* (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir. 1992)). "In determining whether an official is entitled to absolute immunity, courts employ a 'functional' approach, 'looking at "the nature of the function performed, not the identity of the actor who performed it."'" *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 394 (2d Cir. 2006)) (additional quotation omitted). "The principle applies to 'functions of a government attorney "that can fairly be characterized as closely associated with the conduct of litigation or potential litigation" in civil suits—including the defense of such actions.'" *Id.* (quotations omitted). "'[O]nce a court determines that challenged conduct involves a function covered by absolute

immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused.'" *Id.* (quoting *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004)).

"Post-arraignment, pre-trial 'acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.'" *Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 101 (N.D.N.Y. 2023) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "In contrast, pre-arraignment actions—such as interviewing a witness to obtain probable cause for an arrest—are not entitled to the protections of absolute immunity." *Id.* (citing *Hill v. City of New York*, 45 F.3d 653, 658, 661 (2d Cir. 1995)). "Additionally, 'absolute immunity may not apply when a prosecutor is not acting as "an officer of the court," but is instead engaged in other tasks, say, investigative or administrative tasks.'" *Id.* (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009)) (additional quotation omitted). "Investigative tasks beyond the scope of absolute immunity are those 'normally performed by a detective or police officer.'" *Id.* at 102 (quoting *Buckley*, 509 U.S. at 273).

Plaintiffs' allegations against government attorneys stem entirely from these Defendants' functions as counsel for the state. *See* Dkt. No. 1 at ¶¶ 67-71. These Defendants are entitled to absolute immunity for such conduct, even where Plaintiffs contend that the conduct was improperly motivated or "unbecoming." Dkt. No. 13 at 23; *see also Bernard*, 356 F.3d at 504 ("Where . . . a prosecutor's charging decisions are not accompanied by any such unauthorized demands, the fact that improper motives may influence his authorized discretion cannot deprive him of absolute immunity"). Moreover, Plaintiffs' allegations of a conspiracy do not save these claims. *See Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995) (quotations omitted)

("As this Court and others circuits have repeatedly held, since absolute immunity covers 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate,' . . . when the underlying activity at issue is covered by absolute immunity, the 'plaintiff derives no benefit from alleging a conspiracy'").  Thus, the claims against government attorneys are dismissed.

## G.      Witness Immunity

Plaintiffs' complaint alleges constitutional violations based on various Defendants providing testimony.  Magistrate Judge Stewart recommended dismissing any such claims based on absolute witness immunity.  *See* Dkt. No. 12 at 22-23.  Plaintiffs object, "grounding their objection in the assertion that the corruption, conspiracy, and collusion among the defendants have led to fraudulent activities within court proceedings."  Dkt. No. 13 at 26.

"It is well established that testifying witnesses, including police officers, are entitled to absolute immunity from liability under [Section] 1983 based on their testimony."  *Rolan v. Henneman*, 389 F. Supp. 2d 517, 519 (S.D.N.Y. 2005) (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983)) (collecting cases).  "As explained in *Briscoe*, absolute immunity for witness testimony in [Section] 1983 cases is rooted in the belief that '[a] witness's apprehension of subsequent damages liability might induce two forms of self-censorship."  *Id.*  "First, witnesses might be reluctant to come forward to testify.  And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability.'"  *Id.* (quoting *Briscoe*, 460 U.S. at 333).  "Such absolute immunity applies to witnesses, 'whether governmental, expert, or lay witnesses' in Family Court proceedings."  *Santos v. Syracuse Police Dep't*, No. 5:22-CV-1102, 2022 WL 16949542, *7 (N.D.N.Y. Nov. 15, 2022) (quoting *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 945 (E.D.N.Y. 1999)).

23

"In this Circuit, however, absolute witness immunity does not extend to allegations of conspiracy." *Cipolla v. Cnty. of Rensselaer*, 129 F. Supp. 2d 436, 451 (N.D.N.Y.), *aff'd*, 20 Fed. Appx. 84 (2d Cir. 2001) (citing *Dory v. Ryan*, 999 F.2d 679 (2d Cir. 1994); *San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 254 (2d Cir. 1984)); *see also Coggins v. Buonora*, 362 Fed. Appx. 224, 225 (2d Cir. 2010). The Supreme Court, in *Rehberg v. Paulk*, 566 U.S. 356 (2012), "held that grand jury witnesses, like trial witnesses, are entitled to absolute immunity if a plaintiff's claim is based on their allegedly perjurious testimony." *Gonzalez v. Baart*, No. 5:21-CV-01379, 2023 WL 8818302, *3 (N.D.N.Y. Dec. 20, 2023). The Supreme Court stated that "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Rehberg*, 566 U.S. at 369. "Courts have distinguished presenting false testimony and soliciting false testimony from others and creating fabricated evidence." *Gonzalez*, 2023 WL 8818302, at *4 (collecting cases).

Plaintiff contends that psychological reports that were used as evidence during hearings were false or unfinished, and that various Defendants either refrained from testifying or testified falsely. *See* Dkt. No. 1 at ¶¶ 93-94, 96, 98, 100-01, 127, 162,  186, 190. Insofar as Plaintiffs allege that witnesses testified falsely, such testimony is protected by absolute immunity. To the extent Plaintiffs allege that some of the Defendants conspired to present false testimony, the claims might not automatically be subject to dismissal on witness immunity grounds. *See Cipolla*, 129 F. Supp. 2d at 451; *Gonzalez*, 2023 WL 8818302, at *4. However, Plaintiffs have not provided enough information concerning non-testimonial actions used to create fabricated testimony, beyond their assertions of a conspiracy-at-large. Even assuming not all witness

24

Defendants are entitled to absolute immunity, the claims must be dismissed for failure to sufficiently plead state action or a conspiracy.

**H.   State Action**

Plaintiffs bring their suit against numerous private parties, including Defendant Smith, Plaintiff Smith's stepfather and mother, a nurse, and private lawyers and law firms.  *See* Dkt. No. 1 at ¶¶ 82-89, 99-111.  Magistrate Judge Stewart recommended that those claims be dismissed because the private Defendants are not state actors: a prerequisite to bringing Section 1983 and 1985 claims.  *See* Dkt. No. 12 at 24-25.  Plaintiffs object to that conclusion because the private individuals "orchestrated their actions in unison with state actors."  Dkt. No. 13 at 27.

"'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.'"  *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)).  "'A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action.'"  *Id.* (quoting *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003)).  "'[S]tate action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor."'"  *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)) (additional quotation omitted).  "'Conduct that is formally "private" may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action.'"  *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 847 (1982)).

25

"'To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.'" *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)).  "Put differently, a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).  "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id.*

Plaintiffs state in their objections that the attorneys for the children conspired with state actors because their hours are approved by the state court judicial Defendants and their positions are dependent on state funding.  *See* Dkt. No. 13 at 28-29.  Plaintiffs contend that they "personally observed 'meetings of the mind' occurring during off [the] record court proceedings and informal gatherings, like lunches, where conspiratorial strategies were devised and later executed in court." *Id.* at 29.

These contentions and the allegations in Plaintiffs' complaint are insufficient to hold the private Defendants out to be state actors.  It is well-settled that "'[t]he fact that a private entity uses the state courts does not transform the private party into a state actor.'" *Rice v. City of New York*, 275 F. Supp. 3d 395, 403-04 (E.D.N.Y. 2017) (quoting *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 516 (S.D.N.Y. 2016)); *see also Malave-Sykes v. Endicott Police Dep't*, No. 3:23-CV-1215, 2023 WL 6847684, *5 (N.D.N.Y. Oct. 17, 2023) (quotation omitted) ("[P]roviding false information to the police does not make a private individual a state actor and liable under § 1983'"); *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd*, 485 Fed. Appx. 500 (2d Cir. 2012) ("[A]lthough appointed by the state, an attorney for the

children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent"); *Milan v. Wertheimer*, 808 F.3d 961, 962-64 (2d Cir. 2015) (affirming dismissal of claims against children's grandmother for initiating protective services investigations because grandmother was not a state actor).

Because Plaintiffs have stated no more than conclusory allegations that the private Defendants conspired with state actors, the Court dismisses the complaint against those private Defendants for failure to state a claim under Section 1983.

I.      **Affirmative Duty**

In Magistrate Judge Stewart's Report-Recommendation and Order, he next addressed Plaintiffs' claims against Saratoga County police officers, county departments of social services, and school district administrators. *See* Dkt. No. 12 at 26-30. Magistrate Judge Stewart summarized the allegations against those various entities and individuals as resting on the failure "to better intervene and prevent misconduct of private parties against [Plaintiffs] or the Smith children." *Id.* at 28. He explained, however, that the Supreme Court has rejected claims of an affirmative duty to act under Section 1983. *See id.* at 28-29 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 192 (1989); *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 768-69 (2005)).

Plaintiffs object and "express confusion and disagreement with Magistrate [Judge] Stewart's ruling, which concluded that the officers had no affirmative duty, a decision that contradicts the policies stated by the plaintiffs in their original complaint." Dkt. No. 13 at 30. Plaintiffs "characterize" the police officers' conduct "as a sustained campaign of retaliation and a persistent failure to provide protection, spanning four years." *Id.* at 32. Plaintiffs also "highlight Magistrate [Judge] Stewart's failure to assert qualified immunity for the officers as further

evidence that their claims warrant progression in the legal process.  This stance underscores their belief in the seriousness of their allegations and the need for judicial scrutiny of the officers' actions."  *Id.* at 31.

First, there is no requirement that a court address every single potential ground for dismissal where it is clear that a claim should be dismissed.  *See, e.g.*, *Curtis v. Greenberg*, No. 22-252-CV, 2023 WL 6324324, *2, n.3 (2d Cir. Sept. 29, 2023) ("Because we affirm the dismissal of the RICO claims based on the failure to adequately plead a RICO enterprise, we need not address the district court's alternative grounds for dismissal"); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 441 (N.D.N.Y. 2009) ("[B]ecause the Court has found adequate grounds on which to adopt Magistrate Judge Lowe's Report-Recommendation, . . . the Court does not address th[e] alternative recommendation . . . .").  Therefore, the Court takes no issue with Magistrate Judge Stewart's decision not to address qualified immunity.

Second, it is well settled that police officers do not have an affirmative duty to investigate alleged crimes to the extent and in the way that a complainant or arrestee requests.  *See Buari*, 530 F. Supp. 3d at 389 (quotation omitted) ("'[A] police officer's failure to pursue a particular investigative path is not a constitutional violation'"); *Brown v. City of New York*, No. 12-CV-3146, 2014 WL 5089748, *5 (S.D.N.Y. Sept. 30, 2014) ("Police officers do not have an affirmative duty to investigate allegations made by a complaining witness prior to effectuating an arrest"); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him. . . .  Nor does it matter that an investigation might have cast doubt upon the basis for the arrest").

Third, insofar as Plaintiffs allege that the officers violated their First Amendment rights, there are insufficient allegations in Plaintiffs' complaint to state such a claim.  *See* Dkt. No. 13 at 31; *see also* Dkt. No 1.   Plaintiffs summarily allege that Defendant police officers brought false charges and protection orders against Plaintiffs in retaliation for Plaintiffs' "legal challenges against governmental grievances."  Dkt. No. 1 at ¶ 250.  Plaintiffs' contention that "the officers" retaliated against them by "levying fraudulent harassment charges," Dkt. No. 13 at 31, cannot stand because criminal charges are brought by a prosecutor, not police officers.  *See Mortimer v. Wilson*, No. 15-CV-7186, 2020 WL 3791892, *8-9 (S.D.N.Y. July 7, 2020).

As to social services and the school district, Plaintiffs contend that "[i]ndividuals in these positions are expected to respond to, and report, any instances of wrongdoing, unethical behaviors, or legal violations."  Dkt. No. 13 at 32.  Specifically, Plaintiffs rely on a school or administrator's mandatory reporting requirements for suspected child abuse.  *See id.* at 33.

As Magistrate Judge Stewart aptly explained, "[a]lthough New York State law requires that mandated individuals report instances of suspected child abuse or maltreatment, such reporting is not constitutionally required."  Dkt. No. 12 at 30.  In other words, violation of a state law does not create a cognizable Section 1983 claim.  *See Jackson v. Pfau*, No. 9:10-CV-1484, 2011 WL 13127988, *15 (N.D.N.Y. May 12, 2011), *aff'd*, 523 Fed. Appx. 736 (2d Cir. 2013) ("[A] Section 1983 claim brought in federal court is not the appropriate forum to assert violations of state law or regulations").  Thus, the Court agrees with Magistrate Judge Stewart that Plaintiffs' claims concerning a school's mandatory reporting obligations does not create a cognizable Section 1983 claim.  As such, those claims are dismissed.

**J.**     *Monell* **and Supervisory Liability**

Plaintiffs seek to bring municipal and supervisory liability, or *Monell*, claims in count nine of their complaint. *See* Dkt. No. 1 at ¶¶ 267-73. Magistrate Judge Stewart addressed Plaintiffs' *Monell* claims. *See* Dkt. No. 12 at 30-31. He noted that Plaintiffs are required to plead that each Defendant violated the Constitution through their own acts and that Plaintiffs failed to do so. *See id.* at 31. Magistrate Judge Stewart also explained that because Plaintiffs failed to state any underlying constitutional violations, the *Monell* claims were required to be dismissed. *See id.*

Plaintiffs objected and listed the ways in which they believe their complaint established *Monell* liability. *See* Dkt. No. 13 at 33-34. In doing so, Plaintiffs contend that their constitutional rights were violated through every possible route for supervisory liability: "a specific policy," "actions undertaken by policymaking officials," "pervasive practices by subordinate officials," and "a notable failure by these policymakers to adequately train or supervise municipal employees." *Id.* at 34.

"'It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 78 (N.D.N.Y. 2023) (quoting *Johnson v. Miller*, No. 9:20-CV-622, 2020 WL 4346896, *9 (N.D.N.Y. Jul. 29, 2020)). "As to supervisory liability, there is no 'special test,' and 'a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."'" *Id.* (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (additional quotation omitted). "'To establish a violation of § 1983 by a supervisor, as with everyone else, then, the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights.' . . . It is not sufficient to plead that an official was 'conceivably personally involved.'" *Id.*

(quoting *Tangreti*, 983 F.3d at 615-16, 618).  "'*Tangreti* makes clear that, after *Iqbal*, [a p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that a supervisor behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation.'"  *Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 322 (N.D.N.Y. 2023) (quotation, quotation marks, and emphasis omitted); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"'Thus, an official's conduct in making and executing policy, or failing to make or execute policy, may satisfy *Iqbal*'s requirement of personal involvement if such conduct meets the elements required to establish an underlying constitutional violation and is undertaken with the required state of mind.'"  *Lalonde*, 662 F. Supp. 3d at 322 (quotation omitted).  Importantly, "if the plaintiff cannot show that his or her constitutional rights were violated by any individual defendants, the *Monell* claim will also fail."  *Oliver v. City of New York*, 540 F. Supp. 3d 434, 436 (S.D.N.Y. 2021); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct").

Plaintiff's contentions closely track the pre-*Tangreti* standards for supervisory liability. *See Hendrix v. Annucci, et al.*, No. 9:20-CV-0743, 2021 WL 4405977, *6 (N.D.N.Y. Sept. 27, 2021) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)) ("[T]he Second Circuit's general rule was that a supervisory official's personal involvement could have been proven by showing any five factors: '(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional

practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring'").  Plaintiffs' complaint does not set forth personal involvement in a constitutional violation against every single Defendant.

Regardless, Plaintiffs' *Monell* claims cannot proceed because their underlying constitutional claims fail for the reasons set forth in this decision—abstention, immunity, lack of state action, and failure to state a claim.  *See Segal*, 459 F.3d at 219.  Thus, without underlying constitutional violations, Plaintiffs' *Monell* claims must be dismissed.

## K.   ADA and Rehabilitation Act Claims

Plaintiffs set forth an ADA and Rehabilitation Act claim.  *See* Dkt. No. 1 at ¶¶ 299-301. Plaintiffs refer to themselves in the plural form when discussing these claims, but it appears that Plaintiff Smith is the individual with alleged disabilities of "ADHD, Auditory Processing Delay, and a Written Learning Disability."  *Id.* at ¶ 300; *see also id.* at ¶¶ 178, 185.  Plaintiffs allege that Defendant Judge Wait denied Plaintiff Smith "an ADA-complaint note-taker for court hearings" and that Defendant Wait made derogatory and demeaning comments about Plaintiff Smith's disabilities.  *See id.* at ¶¶ 178, 185, 300.

Magistrate Judge Stewart recommended dismissing these claims as "barred by the *Rooker-Feldman* doctrine, judicial immunity, and by §1983's requirement that injunctive relief against a judge is barred unless a declaratory decree was violated, or declaratory relief was unavailable."  Dkt. No. 12 at 32.  He also noted that neither the ADA nor Rehabilitation act provide for individual liability.  *See id.*

32

Plaintiffs summarily object, stating that the ADA claim does not fall under the *Rooker-Feldman* doctrine and does not qualify for immunity.  *See* Dkt. No. 13 at 33.  Plaintiffs contend that "the ADA violations were not only discriminatory but also strategic, serving as a means for the defendants to shield themselves from exposure related to their corruption and malfeasance." *Id.*

The Second Circuit has explicitly applied the *Rooker-Feldman* doctrine to ADA claims. *See DiLauria v. Town of Harrison*, 64 Fed. Appx. 267, 270 (2d Cir. 2003).  Similarly, "[c]ourts in this Circuit and others have found judicial immunity to extend to claims under the ADA."  *Brooks v. Onondaga Cnty. Dep't of Child. & Fam. Servs.*, No. 5:17-CV-1186, 2018 WL 2108282, *4 (N.D.N.Y. Apr. 9, 2018) (collecting cases).  Thus, the Court finds no clear error in Magistrate Judge Stewart's applications of these rules of law to Plaintiffs' ADA and Rehabilitation Act claims.[3]  Importantly, as Magistrate Judge Stewart explained, and to which Plaintiffs do not respond, "neither statute provides for individual liability."  Dkt. No. 12 at 32 (citing *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022)); *see also Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 327 (N.D.N.Y. 2023) (quoting *Fera v. City of Albany*, 568 F. Supp. 2d 248, 259 (N.D.N.Y. 2008)) ("[T]o the extent that Plaintiffs are suing the individual Defendants in their individual capacities, 'neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suit . . . .'").  Plaintiffs' ADA and Rehabilitation Act claims are therefore dismissed.

## L.    State Claims

Because Magistrate Judge Stewart recommended dismissing all of Plaintiffs' federal claims, he also recommended dismissing Plaintiffs' state-law claims.  *See* Dkt. No. 12 at 32-33.

---

[3] Insofar as Magistrate Judge Stewart addressed the injunctive relief issue, the Court reiterates Plaintiffs' contention that they do not seek injunctive or declaratory relief, and request only monetary damages.

Plaintiffs object, arguing that their federal claims are meritorious and should not be dismissed which would save their state-law claims. *See* Dkt. No. 13 at 35.

It is well settled that the Court is not required to retain jurisdiction over state-law claims if the Court dismisses all federal claims. *See Hyman v. Cornell Univ.*, 834 F. Supp. 2d 77, 83 (N.D.N.Y. 2011), *aff'd*, 485 Fed. Appx. 465 (2d Cir. 2012). Indeed, "[a] district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). "'Dismissal of the pendent state law claims is not, however, "absolutely mandatory" even where the federal claims have been dismissed before trial. . . .'" *Hyman*, 834 F. Supp. 2d at 83 (quoting *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)).

All of Plaintiffs' federal claims are subject to dismissal for the reasons set forth in this Memorandum-Decision and Order. As such, the Court declines to exercise jurisdiction over the state-law claims and they too will be dismissed.

## M.    Leave to Amend

"[P]laintiffs object to the dismissal of any claims without first being given the opportunity to amend them. As pro se litigants, they request that the court allows them the chance to revise their claims if necessary, emphasizing the importance of this consideration in the context of self-representation." Dkt. No. 13 at 37.

Magistrate Judge Stewart recommended dismissal of Plaintiffs' complaint against the following Defendants with prejudice and without leave to amend: Judge Paul Pelagalli; Saratoga Supreme Court Judges John Ellis and Dianne Freestone; City Court Judge Jeffrey Wait; Saratoga County Court Judge James Murphy; Administrative Judge for the Fourth Judicial District Judge Felix Catena; Appellate Division Justices Elizabeth Garry and Christine Clark; Court Attorney

Karla Conway; Court-appointed experts Jaqueline Bashkoff and Dr. Mary O'Connor; the private attorneys appointed by the Court to represent the Smith children - Jessica Vinson of Vella Carbone, LLP; Elena Tastensen; and Heather Corey-Mongue; Samuel Maxwell, Emily Williams, Michelle Granger, Michael Hartnett; Jillian Knox; Veronica Smith; and Denise Rista-Tobin.  *See* Dkt. No. 12 at 33-34.  Magistrate Judge Stewart recommended as such because the claims against those individuals are barred by judicial, quasi-judicial, government attorney, and/or witness immunities.  *See id.*  He recommended that Plaintiffs be given leave to amend all other claims. *See id.* at 34-35.

"'Sua sponte dismissal of *pro se* [] petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by'" the Second Circuit.  *Collymore v. Krystal Myers, RN*, 74 F.4th 22, 27 (2d Cir. 2023) (quoting *Moorish Sci. Temple of Am., Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)).  "In the § 1983 context, such dismissals are 'inappropriate' – regardless of the merits – if the complaint alleges that '(1) the defendant was a state actor . . . when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.'"  *Id.* (quoting *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015)).  However, courts often dismiss claims barred by immunity without leave to amend because better pleading cannot dure the deficiency, *i.e.*, amending a complaint does not destroy immunity.  *See Clay v. Bishop*, No. 1:22-CV-0983, 2023 WL 3352903, *7 (N.D.N.Y. Feb. 7, 2023) (collecting cases); *Woods v. Vermont*, No. 2:22-CV-00008, 2023 WL 2624352, *2 (D. Vt. Mar. 24, 2023); *Burdick v. Town of Schroeppel*, No. 5:16-CV-01393, 2017 WL 5509355, *9 (N.D.N.Y. Jan. 31, 2017), *aff'd*, 717 Fed. Appx. 92, 93 (2d Cir. 2018).

Because the deficiency in Plaintiffs' claims against judges, court staff, witnesses, government attorneys, and court-appointed individuals are substantive and cannot be cured by better pleading, the Court dismisses those claims with prejudice and without leave to amend. However, the Court will permit Plaintiffs to otherwise amend their complaint. Plaintiffs are informed that any amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Jeanty*, 669 F. Supp. 3d at 118.[4]

**N.    Electronic Filing**

Plaintiffs ask that Court "reconsider and override" Magistrate Judge Stewart's decision to deny their request to file electronically. Dkt. No. 13 at 38; *see also* Dkt. No. 12 at 36. Because Plaintiffs' complaint is being dismissed, their request to file electronically is moot. The Court will not reconsider it at this time.

### IV.  CONCLUSION

After carefully the Plaintiffs' submissions, Magistrate Judge Stewart's Report-Recommendation and Order, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Stewart's Report-Recommendation and Order (Dkt. No. 12) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiffs' complaint (Dkt. No. 1) is **DISMISSED**; and the Court further

**ORDERS** that the claims against Judge Paul Pelagalli; Saratoga Supreme Court Judges John Ellis and Dianne Freestone; City Court Judge Jeffrey Wait; Saratoga County Court Judge James Murphy; Administrative Judge for the Fourth Judicial District Judge Felix Catena;

---

[4] The Court directs Plaintiffs to the instructions outlined in Magistrate Judge Stewart's Report-Recommendation and Order. *See* Dkt. No. 12 at 35-36.

Appellate Division Justices Elizabeth Garry and Christine Clark; Court Attorney Karla Conway; Court-appointed experts Jaqueline Bashkoff and Dr. Mary O'Connor; the private attorneys appointed by the Court to represent the Smith children - Jessica Vinson of Vella Carbone, LLP; Elena Tastensen; and Heather Corey-Mongue; government attorneys Samuel Maxwell, Emily Williams, Michelle Granger, Michael Hartnett; and testifying witnesses Jillian Knox and Veronica Smith be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**; and the Court further

ORDERS that all other claims be **DISMISSED WITHOUT PREJUDICE** with leave to file an amended complaint within thirty (30) days of the date of this Order; and the Court further

ORDERS that, if Plaintiffs fail to file an amended complaint within **thirty (30) days** of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case, without further order of this Court; and the Court further

ORDERS that Plaintiffs request to reconsider Magistrate Judge Stewart's denial of leave for electronic filing is **DENIED**; and the Court further

ORDERS that the Clerk of the Court serve a copy of this Order upon Plaintiffs in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated:  May 21, 2024
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

37